. Judge Nicholas
delivered the Opinion of the Court.
In March, 1797, William Spiller, a citizen of Virginia, made his will, whereby he devised to each of his four then children, a tract of land, by name ; gives to his wife, in the event of her marrying again, a tract of three hundred acres in Kentucky, some furniture, and one fifth part of his stock ; and lends her, during life, certain slaves ; but in case she did not marry, it was his desire, that his estate should be kept together, for the support of her and all his children, until they successively attained twenty one years, or married, “ when I wish all my slaves (except the one given to my daughter Mary) may be equally divided among them and my wife, allotting her an equal proportion with each of them.” And so on, as they successively attained twenty one, or married; “ and the part allotted my wife is to be equally divided, at her death, among all my children. All my property not specifically devised, as also what I have lent to my wife, I design, may be equally divided among all my children, at her death.”
In 1799, George A. Spiller, a son of the testator, was born, and in 1800, the testator died.
A devise, or bequest, to a testator’s children, is not confined to those born at the date of the will_Those bom after the date of the will, and prelerrail-ted, and not provided for by settlement,'— even those born after the death of the testator, are entitled to shares equal to those born before the date of the will —by the common law rule of construction in Engl and; in Ky. by force of tire statute,such chil dren are entitled to such shaves as they would have taken if no will had been madp.
Among the tracts so devised, was one in Kentucky, to B. C. Spiller, who having sold and conveyed it to sundry persons, this suit in ehancery was brought, by George A. Spiller, against them, asserting claim to a portion thereof, as a pretermitted child of the testator, and praying a division and allotment to him, of his interest in the tract, and compensation for rents and profits;
The court decreed that he was entitled to one fifth part of the tract ; tliat he ought to pay for any ameliorations or improvements on the part allotted to him, and have a credit for the rents and profits, and waste and deterioration of soil thereon ; and appointed commissioners to lay off and divide the fifth part, from off some side or end of the tract, leaving the balance in convenient form, and having due regard to quality &c.
From this decree the defendants have appealed ; and the main question presented for consideration, is, whether, George A. Spiller, having been born subsequent to the making of the will, is embraced by the provisions of the third section of our act of wills, 2 Dig. 1242, passed in 1797, and entitled to succeed to the same portion of his father’s estate, as if he had died intestate. This essentially depends upon the construction to be given to the will, and the act — to ascertain, first, whether he be provided for at all by the will, and if he is, then whether it is such a provision as comes within the true intent and meaning of the statute.
The affirmative of both branches of this proposition is confidently insisted upon, in behalf of the appellants, and we have been cited to many cases adjudged in England, where, under similar devises, a child born after the mak. ing of the will, or even in ventre m mere at the death of the testator, was permitted to take with the other children. From an attentive investigation of those and many other cases, we feel bound to admit, that the English courts now, or before the revolution, would have determined that George A. Spiller did take under the different devises in this will to all the testator's children. The contrary construction is, however, not without the support of very respectable authority. In the case of Northey vs. Strange, 1 P. Williams, 340, it is said, that a devise *172 to one’s children or grandchildren, should, prima fade, only relate to such children or grandchildren as were living at the time of making the will ; but if the devise were to children living at testator’s death, that rule was otherwise, and after-born children would take. In the case of Armistead vs. Dangerfield, 3 Munford, 22, Chancellor Taylor laid down the rule to be this : “ that where* a testator speaks of children, generally, he is to be understood as referring to those, either living at the time of making the testament, or at his death, as circumstances,, to be collected from his will, may justify.” The construction given by him to the will in that case, according to this rule, was affirmed by the court of appeals of Virginia. But the weight of authority is'decidedly the other way. The rule to be gathered from the English books, is, that where a devise is to a man’s children generally, that it applies to all children in esse at the-time of his death, and the courts will not, unless compelled by testator’s words, restrict his bounty to those who were living at the time of the will, to the exclusion of others born in testator’s life time. See Lowndes on Legacies, chap. 5, ps. 121, 132 — 1 Roper on Legacies, 46, and authorities cited-
It is very obvious, that this rule of construction has, in many cases, strained, and must, in many more that may occur, strain the language of a testator beyond its necessary, natural import, and as in this case, even beyond what was most probably his intention and meaning .at the time of writing the will. The rule must, therefore, have been adopted by the English courts upon principles of policy affecting this class of cases, entirely extraneous from the ordinary rules and principles of construction. Nor is it difficult to ascertain the policy or particular reasons for adopting this peculiar rule.
At the common law, or more properly speaking, according to a principle of justice engrafted upon it by the ante-revolutionary English decisions of the last century, a total change of a testator’s circumstances, after the making of his will, was deemed an implied revocation of it. This total change of circumstances was held not to occur where there were children at the date of the will, by the subsequent birth of a child or children. The *173 rule operated uniformly as to all devises. There was no distinction whatever made between devises of realty and of personalty. Whatever would revoke a will as to one, would also as to the other, and vice versa. See the elaborate discussion of the case of Shepperd vs. Shepperd, by Sir George Hay, in 1770 — reported 5 Durnf. and East, 51 ; also Roberts on Wills, 303 ; 4 Kent's Com. 506 ; and Brush vs. Wilkins, 4 John. Chy. 510.
II Dig. 124246
Such being the limited extent to which the principle of implied revocation from change of circumstances was confined, to prevent the great injustice which must frequently take place, by the unintentional disherison of a testator’s after-born children, the courts made the will speak as at the time of his death, and permitted after-born children, and even a child in ventre sa mere, to take under a devise to children generally. An equitable extension of the same principle made the rule apply to a devise to the children of a third person.
This still left a large class of cases, where the after-born children would still be unintentionally disinherited. To remedy this evil entirely, and give to the principle of implied revocation, an extension equal to its intrinsic equity, our statute of 1797, declares: — “ Every will made ' when the testator had no child living, wherein any child he might have, is not provided for, or mentioned, if at the time of his death he leave a child, or leave his wife enceint of a child afterwards born, shall have no effect during the life of such after-born child, &c. When a testator having a child or children, born at the time of making and publishing his will, shall, at his death, leave a child or children born after the making of his will, or shall leave his wife enceint, the after-born or posthumous child, if unprovided for by settlement, and be neither provided for, nor disinherited, but only pretermitted, by the will, shall succeed to the same portion of his father’s estate, as such child would have been entitled to, if the father had died intestate ; towards raising which portion, the devisees and legatees shall contribute proportionably out of the parts devised and bequeathed to them.”
Since the passage of this act, there no longer exists the same reason as existed theretofore, for so construing *174 a will) as to malee a devise to a testator’s children generally, embrace such of them as are born subsequent to the publication of the will. The statute has done away with all reason, or necessity, for any such rule of construction, by the substitution of a much more beneficial provision in favor of after-born children. There is a familiar maxim, that where the reason for a rule of law ceases, the law ceases with it. Shall this maxim be applied here, and made to rule the decision of this case ? There are most cogent- reasons in- favor of its application. Otherwise, this wise and just enaction will, many times, be defeated of its beneficial operation.
A residuary devise to the testator’s children, in general terms, (intendedmere-Jy to dispose of s,uch estate as may have been accidentally omitted in the morespeeifiede-vises,) will not prevent the af-terborh, orpost-humous, children from taking (under the statute of K.) shares equal with those bom before the dato of the will.
It is insisted, in behalf of the appellants, that if there is any provision whatever, however small', made for an after-born child, it is not pretermitted within the terms of the act, and cannot take under its provisions. Nor can this be gainsaid where the provison is expressly and unequivocally made. Now, nothing is more common than, that after a man has specifically devised among his children, the great bulk and body of his estate, in order to cover whatever may have been accidentally omitted, he devises the residue to be equally divided among his children. This, according to the English rule of construction, amounts to a bequest in favor of an after-born, or posthumous, child ; and though it amount but to a pittance out of a large estate, yet according to the argument with which we are pressed, it is a provision made by the will, the child is not pretermitted, and cannot take by virtue of the statute. The case in hand is one precisely of this character. The testator, manifesting an equal affection for all the children he then had, makes a large devise of real estate to each of them, and then directs, that after they and their mother have been maintained out of the residue of his estate, it shall, at her death, be equally divided among all his children. So that the after-born child, who seems not to have been at all thought of by the testator, at the making of his will, instead of getting, under the statute, a full fifth of his whole estate, is to receive only a fifth of this residuary devise. It must be obvious to every one, upon the slightest reflection, that, if we adhere to this rule of construe- *175 '¡bon, we must essentially and most materially obstruct the statute in operating those valuable and beneficent re-suits which it was made to effectuate. We cannot consent to be instrumental in so curtailing its operation.
The after-born tSSewüíof the father, may cwylftóm each devisee, or from Sfaera'detSe™ the proportion which such devisee is bound to contribute, without making the other devisees parties. Want of notice, will not avail the purchaser under a devisee, against the claim of a child pretprmitted in the will, for contribution out of the estate purchased.
Should we be mistaken in this view of the case, and be bound, on the principle of stare decisis, to adhere to the English rule, there is yet another view of it, in which we feel still more confidence, and which will lead us to about the same result. That is, we think we should give such a construction to the statute, as never to permit its operation in favor of an after-born child to be defeated by one of these illusory provisions, proceeding from the application of a technical and mere artificial rule of construction, and not from the declared and unambiguous expression of intention on the part of the testator himself. In other words, we shall feel it our duty not to consider a devise of this description, as a provision made for an after-born child,within the meaning and contemplation of the statute; unless it be free from doubt on the face of the will, that the testator had such child in contemplation, at the time of making the will, and intended such devise as a provision for it.
VVe feel strongly fortified in this conclusion, by the determination of the court of appeals of Virginia, in Amistead vs. Dangerfield, before cited, upon a case perfectly analogous to this. It was there held, that a devise, in a will very similar to that of Spiller, to a testator’s children generally, does not comprehend a posthumous child, so as to prevent it from claiming, as a pretermit-ted child, under the act of Virginia, essentially the same as our own.
That case contains an answer, also, to the objection taken by the appellants, for an alleged want of proper parties — the other devisees of Spiller not being before the court. It shews that it is not necessary to bring all the devisees before the court, and make them rateably contribute towards raising him a fifth of the whole es-
May 13.
A tract of land having been devised by a.testator, sold out by the devisee, and divided among several ■ purchasers —another claimant obtaining a decree for a share of the devise,his portion may be laid off in one body, from any part of the original tract, in the most conve-nientinode,witlv respect to the improvements, §*c. _ and need not be taken in parcels from each purchas-er.-Those from whom it is-taken, will be entitled to indemnity, pro rata, from the others.
Where aclaim-EwMchhe'was pretermitted, ob gainsuderisee' or his vendees, the landTto he allotted to him, laid off as6 to
tatc; but that he can sue, and recover from each, a fifth of that which was devised to him.
,It also answers the objection, -that the defendants here are purchasers,without notice.
It confirms the correctness of the decree of the circuit court in its details, except as to the allotment to the complainant of the fifth of the tract in one entire body, instead of taking a fifth from each defendant, of that which, he holds. And in this we approve the decree ; inasmuch as there is no particular circumstances shewn, sufficient to influence the chancellor to a different course. The defendant or defendants from whom the fifth shall be taken, will be entitled to indemnity, by pro rata contribution, from the other defendants.
The defendants filed a plea, in the nature of a plea in abatement, stating that the complainant was a non-resident, and had given no security for costs. The court permitted the complainant to give the security, nunc pro tunc-, and overruled the plea. We feel no doubt the court was right in so doing. Pleas in abatement are not properly applicable to chancery proceedings ; nor are they allowed the effect of absolutely dismissing the bill, without leave to amend.
The decree must be affirmed, with costs.
Pleas in abatement in chancery da not have the effect of dismissing the bill absolutely.
That complainant is a non-resident, and has not given security for costs, being pleaded, m chancery, he may give the security nunc pro tunc, and save the dismissal.
A petition for a re-hearing in this case was presented, and, after consideration, overruled ; when the following addition to the former opinion was made by the court, and delivered by the same judge.
We perceive no reason for altering the former opinion kere*n > nor f°r apprehending that the circuit court will commit ¡any error in carrying its decree for a division *nío ei^ect- But to preclude all difficulty Oil that subject, we will suggest, that the improvements made by any of defendants, should, if they desire it, be left untouched by the part to be allotted to the complainant ; pró-vided his part can otherwise be laid off in convenient *177 form. If any improvement should fall in the portion allotted to him, he must compensate the proprietor therefor, according to the enhanced value the improvement may give to his share, at the time of making the allotment; subject to a deduction for the amount of waste au-l deterioration, the soil may have suffered whilst used bv the. defendants, and of a reasonable rent for the occupancy of his sharé, whilst in the possession of the defendants, according to the assessed value of the rent, if any thing, provided the land had remained in the situation it was when the defendants took possession. But if it were improved at the time of taking possession, and the value of the rent of such improved part, would be reduced by deterioration of the soil, a proper annual abatement therefor should be allowed, in assessing the value of the rent. If the occupancy of the land, in the state it was at the time possession was taken, would have been worth nothing, of course, nothing will be allowed for rents.
leave to the defendants their improvements, as far as a convenient form of division will allow. Improvements included in theclaim ant’s share, so far as they constitute additions to its value, at the time of the allotment ; also, the waste, deterioration of soil, rents and profits, from the use of the land, are to be valued,the accounts adjusted, and balance decreed.