CHANCERY.

# Shelby's executors *et al.* *vs* Shelby's devisee and Shelby's devisee *vs* Shelby's executor *et al.*

### ERROR TO THE MERCER CIRCUIT.

Case 85.

*Pretermitted and Posthumous children. Devisees. Descents. Distribution. Wills.*

*May 13.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

Isaac Shelby's
will.

ISAAC SHELBY, by his last will, admitted to record in the Lincoln County Court, in the year 1826, devised to his surviving wife, *Susannah*, his homestead tract of land, ("*Traveller's Rest*,") and sundry slaves and articles of

personalty, during her life, remainder to his youngest son, Alfred, who having, shortly after his father's death, intermarried with *Virginia Hart*, continued to reside with his mother and chiefly superintended the estate thus devised to her for life and to himself in remainder, she controlling the household affairs, and he managing the farm, and buying, grazing, and selling, as his own, mules and other live stock, until the 2nd day of December, 1832, when he died, leaving three children, *Isaac, Susan*, and *Alfred*, and his wife *ensiente* with a fourth, born after his death and named *Sarah*, and leaving also a *will*, published when he had only two children and wholly pretermitting his two last, *Alfred* and *Sarah*.

By this last will, which has been regularly proved and recorded, the testator, *Alfred*, gave, 1st, to his widow, during her widowhood and his son *Isaac's* minority, his whole estate, excepting only his "mules on hand and (his) money in possession;" 2ndly, to his son *Isaac*, on his attaining 21 years of age, " *Traveller's Rest*, with all the lands appertaining to it," " six of the choice of (his) negroes, and one equal half of all the others under fifty years of age, also those over fifty years of age," and also " $1000 to purchase stock for his farm;" 3dly, to his daughter *Susan*, $10,000, and one half of his slaves after deducting the six to be first chosen by *Isaac* and those also over 50 years of age, "upon her marrying with the approbation of her mother;" and 4thly, to his widow and children, "the residue of (his) money on hand" and of the proceeds of his mules, to be distributed among them when his son *Isaac* should become 21 years old, until which time his executors were directed to loan that aggregate fund at six per cent. annual interest. And *James, Evan*, and *Isaac Shelby*, brothers of the testator, were nominated his executors and declared to be "the legal, as they were the natural guardians of (his) family."

*Alfred Shelby's* widow and children continued, after his death, to reside at "*Traveller's Rest*" with his mother, who died in *June*, 1833, leaving a *will*, also duly recorded, whereby, with the exception of some small specific legacies, she gave to them her whole estate, to be distributed at such time and in such proportions as her executors

SHELBY'S EX'ORS
*vs*
SHELBY'S DEVISEE, &c.

Alfred Shelby's will.

Susannah Shelby's will.

SHELBY'S EX'ORS
*vs*
SHELBY'S DEVI-
SEE, &c.

Bill by Virginia
Shelby, widow of
Alfred.

Last decree of
Circuit Court.

Principles of the
former opinion
recognized. See
6 *Dana*, 60.

Pretermitted and
posthumous chil-
dren are entitled
and succeed to
the same interest
in testator's es-
tate as if he had
died intestate, &
to raise portions

might deem expedient; and her sons *James, Evan*, and *Isaac*, were nominated and qualified as her executors, as well as the excutors of the testator, *Alfred.*

Mrs. *Virginia Shelby*, claiming rights under her deceased husband's will to which his executors did not acknowledge her title, brought this suit in chancery against them, for adjusting her interests and those of her four children, whom she also made defendants: and during the progress of the case in the Circuit Court the posthumous child, *Sarah*, died intestate of course.

The Circuit Judge has rendered three successive decrees in the case—the first was reversed by a summary opinion, reported in 6 *Dana*, 60; the second was also reversed by an unreported opinion; and the third and last is now to be revised upon a writ of error, prosecuted by the executors and others, and cross errors assigned by Mrs. *V. Shelby.*

By the last decree, now sought to be reversed, the Circuit Judge approved an able and elaborate report by *auditors* appointed to make partition of the land and slaves, and decreed against the executors, in favor of Mrs. *Shelby*, $6,625 37 in her own right, and $9,378 94 as the statutory guardian of her son *Alfred.*

The general principles indicated in 6*th Dana*, *supra*, and now to be more explicitly defined as those which should determine the immediate and ultimate rights of the parties are the following:

1st. *Alfred Shelby's* will should be understood as intending to give to his widow, during her widowhood and the minority of her son *Isaac*, and no longer, the testator's whole estate, excepting the mules and money ''on hand'' at his death; and consequently she is legatee, during her widowhood and *Isaac's* minority, of all the testator's *choses in action* and perishable personalty, the said mules only excepted.

2ndly. According to the statutory provision of 1797, (*Stat. Law*, 1540,) in favor of pretermitted and posthumous children, and the interpretation of that enactment, established in the cases of *Armistead* vs *Dangerfield*, 3 *Munford's Va. Rep.* 22, and of *Haskins et al.* vs *Spiller*, 1 *Dana*, 170, the testator's two children, *Alfred* and *Su-*

*san*, should be considered as pretermitted by his *will,* in the statutory sense; and consequently, in virtue of the statute, they "succeeded" to the same intersts in their deceased father's estate as those to which they would have been respectively entitled in the event of his total intestacy; and, in alloting each of their legal portions, as his heirs and distributees, each *devisee* and *legatee* should contribute proportionally, that is, for example, assuming that each of those portions was one-fourth of two-thirds, (deducting one-third as the widow's legal portion,) then each devisee of land or of slaves should contribute, to each of those heirs, the devised interest in one-fourth of two-thirds, (or 2–12,) and each legatee of personalty should contribute to each of those distributees the bequeathed interest in one-fourth of two-thirds, (or 2–12,) of the property bequeathed to such legatee. The one-third of each kind of property, to be deducted for ascertaining the immediate legal portions of the pretermitted children, remains to each devisee and legatee, whose interests, under the will, will be curtailed only to the extent of their respective contributions on account of those portions.

As *Alfred* and *Sarah* could be entitled, under the statute, to only so much as would have been devolved on them by law in the event of their father's intestacy, and as, in that event, their mother would have been entitled, during her life, to one-third of the land and of the slaves, and absolutely to one-third of the personalty, consequently two-thirds of each class of property constitute the fund from which the legal portions of those pretermitted children are to be drawn, during *Mrs. Shelby's* life; but after her death, the third of the land and of the slaves, to be abstracted as her dowable portion had there been no testamentary disposition, will be subject to partition, *Alfred* and *Sarah* being entitled therein to vested interests in remainder, just as they would have been entitled had there been no *will.* *Mrs. Shelby's* interest, however, will not be enlarged but diminished by this operation; for the *will* is to be disregarded only so far as the pretermitted children are concerned: in that respect it is to be considered as not existing; but after their portions shall have been

*Margin notes:*

SHELBY'S EX'ORS
*vs*
SHELBY'S DEVISEE, &c.

for such, each devisee and legatee should contribute proportionally, and each devisee and legatee then be permitted to enjoy, under the will, their respective devises and legacies, lessened by the contributions made to raise such portions.— The will is to be disregarded only so far as pretermitted child or children are concerned, and then carried into execution.

A devisee cannot succeed to the enjoyment of any property specifically devised to another by the same will, tho' *he may* to a distributive share of property which, under the Stat. is taken from specific devises and set apart for a pretermitted child that had died intestate.

SHELBY'S EX'ORS
vs
SHELBY'S DEVI-
SEE, &c.

allotted, the *will* must otherwise operate precisely as it would had they never been born and had the estate assigned to them neither existed nor been devised. Thus, for example, by allotting to *Alfred* his portion of the land, his mother's interest therein would be reduced to the residual tract, during her widowhood and *Isaac's* minority, and *Isaac's* remainder would be curtailed to the same extent only, and would not be otherwise changed or affected. So too, *Susan's* legacy of $10,000, reduced by *Alfred's* legal draft upon it, would remain to her unaffected by any right in her mother to the distributable third, deducted only for ascertaining *Alfred's* portion, and to which, therefore, *Mrs. Shelby* can have no right, as she did not renounce the provision made for her in the *will*.

On the death of an infant child intestate, the mother succeeds to no part of its lands coming through the father but does to an equal portion with the brothers and sisters, of slaves and personalty.

3dly. According to the established construction of our statutes regulating distribution and descent, *Mrs. Shelby* has no interest in her deceased daughter *Sarah's* portion of the land, as descending to her from her father, but she is entitled, as a coequal distributee with her three surviving children, to one fourth of *Sarah's* legal portion in the slaves and personalty. *Isaac, Susan,* and *Alfred* are entitled to the whole of *Sarah's* fourth of two-thirds of the land *now,* and to her fourth of the remaining third *at their mother's death;* and *Mrs. Shelby, Isaac, Susan* and *Alfred,* are entitled now, each, to one-fourth of *Sarah's* fourth of two-thirds of the slaves, *Sarah's* fourth of the remaining third being distributable in the like four parts after the death of *Mrs. Shelby,* who now has a vested right in remainder to one-fourth and *Sarah's* interest as well as that of *Alfred,* in the personal estate being only one-fourth of two-thirds, that portion is to be distributed among her surviving mother, sister, and brothers, in four equal shares.

The interest of the mother, (tho' a devisee under the will of her husband) in her distributive share of a portion raised for the pretermitted child is an absolute interest.

It may be proper to add to the foregoing outline of the law of the case, the following supplemental suggestions:

1st. Although *Mrs. Shelby's* interest, *under the will,* in the entire estate, the money ''on hand,'' and mules excepted, will be terminated by either her marriage or *Isaac's* majority, yet her interest, as one of *Sarah's* distributees, is absolute and perpetual; and that, although neither *Isaac* nor *Susan* is entitled *now* to the enjoyment

of the property given to them by the *will*, each of them, like their mother and brother *Alfred*, has an immediate right to their distributive interests in so much of *Sarah's* portion of the estate as should be now allotted:

2nd. As the *will* makes no bequest over of the *choses in action* bequeathed to *Mrs. Shelby* during her widowhood and her son *Isaac's* minority, and as the provision made for her should not, in our opinion, be deemed a constructive bar to her distributable interest in that fund so far as it is unbequeathed, she will, in our judgment, be entitled to one-third thereof, absolutely, on her marriage, if she should marry before *Isaac* attains twenty-one years of age, or at the latter period, if she survive it in widowhood.

Only one other preliminary matter is deemed essential to a proper application of the law to the facts, for facilitating correct deductions therefrom, as to the rights of all concerned in this amicable but necessary family litigation.     In their answer, the executors, in their right as executors also of *Mrs. Susan Shelby* deceased, assert a claim against the estate of their testator *Alfred* for about $14,000, for the profits of the land and slaves devised by his father to his mother, during her life, but enjoyed by himself, with her consent.     The Circuit Court disregarded this claim: and as the facts conduce strongly to the conclusion that the use of the farm and slaves was voluntarily surrendered to *Alfred* by his mother, for his own benefit, reserving to herself only a maintenance and certain privileges, all of which she enjoyed, we are inclined to concur in the disallowance of this claim.     But, as there is nothing in the record tending to the deduction that this agreement between *Alfred* and his mother extended beyond his own life, we are of the opinion that her executors are entitled to the profits of the land and slaves for the year (1833) succeeding his death, she having survived until June of that year; and that *Mrs. V. Shelby* and her children are entitled thereto, as the legatees of the mother, and not, therefore, exactly in the proportions in which the distribution should be made had this fund been a part of the testator *Alfred's* estate.

SHELBY'S EX'ORS
*vs*
SHELBY'S DEVISEE, &c.

A will bequeathing choses in action to a widow "during widowhood or the minority of her son" *without any bequest over of that fund,* does not deprive her on marriage or the son's majority, of her distributable interest of one-third in that fund.

Shelby's ex'ors
vs
Shelby's devi-
see, &c.
Upon the preparatory suggestions thus premised, we will proceed, as briefly as possible, to revise the case and adjust the rights of the several parties in the order of classification exhibited in the report of the *auditors*—1st, as to the land; 2dly, the slaves; and 3dly, the personalty.

Detailed suggestions as to the distribution of lands in this case.
I. *Alfred* and *Sarah* being entitled, as *heirs*, each to one-fourth of two-thirds, during their mother's life, and to one-fourth of the entire land at her death, and she being *devisee* of a particular estate and *Isaac* of the remainder, in the whole tract, therefore, *Alfred* is *now* entitled, as heir of his father, to only one-fourth of two-thirds of the land, and, as one of *Sarah's* three heirs, to one-third of her fourth of two-thirds; and at his mother's death, he will be entitled also, as heir of his father and of *Sarah*, to four-twelfths of the remaining third, deducted, during the widow's life, as the portion to which she would have been entitled for her dower had her husband died intestate. In making the partition now, therefore, only one-fourth and one-third of a fourth, (four-twelfths) of two-thirds of the land should be allotted to *Alfred*, and only one-third of a fourth of two-thirds, (*one-eighteenth*) to *Susan* as an heir of *Sarah*, and the same proportion to *Isaac* in the same right. But the report, approved by the decree, allots to *Alfred*, as an heir of his father, one-fourth of the entire tract of land called "*Traveller's Rest*," and, as an heir of *Sarah*, one-third of a like fourth designated as her inheritable portion, whereby he would obtain the immediate enjoyment of more, by one-third, than he is *now* entitled to receive. This is, therefore, erroneous, to the extent of one-third, now deductable as if there had been no will.

The same report, as approved by the decree, allots to *Susan* one-fourth of the entire tract, and one-third of the like fourth, as one of *Sarah's* heirs. This also is erroneous to the whole extent of the fourth part allotted to *Susan*, as an heir of her father; because, being a *devisee*, she can be entitled, as *heir of her father*, to no interest in property devised exclusively to her mother and brother *Isaac*, as long at least as either of those devisees shall have a right of present enjoyment thereof under the will. Whether *Isaac's* interest, as a devisee of the land, should

be deemed to be vested, or only a contingent remainder, and whether, if vested, he might be entitled to the use and profits antecedently to his attaining twenty-one years of age, in the event of his mother's death or marriage prior to that time, or whether such contingently intermediate interest should be considered as undisposed of by the will, and as, therefore, passing by descent, are questions not proper for adjudication in this case, the present and uncontingent rights of the parties being the only subjects now appropriately cognizable by this Court.

In making partition of the land, therefore, all that it is proper now to do is to allot to *Alfred* his one fourth of two-thirds, and one-third of a fourth of two-thirds of "*Traveller's Rest*;" to *Susan*, her one-third of a fourth of two-thirds, and to *Isaac* his one-third of a fourth of two-thirds, leaving the residue to the enjoyment of *Mrs. Shelby*, according to her husband's will, afterwards to devolve according to law and the *will*.

It may not be irrelevant to superadd another important suggestion. In suggesting, in the former opinion in *Dana, supra*, that the entire interests of the surviving "*children, as distributees*, should be decreed to them respectively and distributively," we did not, of course, intend to be understood as referring to *legatees* or *devisees*, but intended, as the language of the opinion literally and technically imports, that the interest of *Alfred*, which is immediate and results to him as distributee and heir, by the law, and not as a legatee or devisee under the *will*, and the interest of *Isaac*, and *Susan*, and their mother, as heirs and distributees of *Sarah*, and which are also immediate and are devolved on them by law independently of the *will*, should be now actually distributed by decree. The ultimate interests of the parties under the *will* and as heirs of *Sarah*, as to so much of her portion in the one-third of the land and slaves as must be deducted during *Mrs. Shelby's* life, could not now be appropriately and finally distributed; they will be so far adjusted and defined by the principles of this opinion and by the distribution which should be immediately decreed, as to prevent any future contest or difficulty as to ulterior questions between the parties who may be hereafter con-

cerned in the ultimate partition and adjustment. Final allotments could not now be made under the *will* without hazard of injustice and a frustration of the testator's intentions.

II. *Mrs. Shelby* being, as already suggested, one of the distributees of *Sarah's* legal portion of the slaves, *Isaac, Alfred,* and *Susan* are entitled each to only one fourth of that portion, instead of one third thereof as in the case of the land. With this exception, the distribution now to be made of the slaves should, like the partition herein prescribed as to the land, be confined to an allotment to *Alfred* of his fourth of two-thirds of all the slaves and his fourth of *Sarah's* fourth of two-thirds thereof, and to *Mrs. Shelby,* and *Isaac,* and *Susan,* each one-fourth of *Sarah's* said fourth absolutely, leaving the residue of the slaves to be enjoyed by *Mrs. Shelby* as devisee, and then to devolve and be distributed, like the land, according to law and the will; *Sarah's* fourth of a third, abstracted during her mother's life, being finally distributable into four equal shares, now vested in remainder in *Mrs. Shelby,* Isaac, *Susan,* and *Alfred,* to be enjoyed after *Mrs. Shelby's* death.

A devise of slaves "six of the choice of the devise" to one at his arriving to 21 years of age or the marriage or death of mother, to whom the use in the interim is given, cannot select until the happening of some one of the events contemplated.

The testator did not, as we infer, contemplate a partition of the slaves between *Isaac* and *Susan,* as *devisees,* until either he shall have attained twenty-one years of age or she shall have married—when, and not sooner, he may make choice of a certain number or portion, and may be entitled to all those *then* over fifty years of age and one half of the residue. But as the legal contributions to the portions of *Alfred* and *Sarah* must draw proportionally from every interest devised or bequeathed, *Isaac's* legacy of the choice of six slaves will be reduced from *six* to *three,* the distributable interests of *Alfred* and *Sarah,* abstracting from that legacy one half, that is, the half of two-thirds of six immediately and the half of the other third at their mother's death, which half (2) of two thirds (4) and half (1) of the two-thirds (2) make *three,* which, deducted from *six,* leaves to *Isaac,* of his legacy of *six, three* only. And the slaves remaining, after allotting to *Alfred* his present portion and distributing that

of *Sarah*, will be those from among whom *Isaac's* choice of three will be made at the proper time.

The partition reported by the auditors and approved by the Circuit Judge is essentially variant from that just suggested as proper at this time; and consequently, in this branch of the case also there is radical error in the decree as rendered.

III. As the widow of *Isaac Shelby* deceased was, at her death, probably entitled to some portion of the personalty which afterwards came to the hands of the executors and of *Mrs. V. Shelby*, and which, being distributable under the will of that testatrix and not as the estate of the testator *Alfred*, should be abstracted from the consideration of this case; it was, therefore, as hitherto intimated by this Court, premature to render the decree as to the personal estate, until the precise extent of the said *Alfred's* interest therein had been ascertained and separated from that of his mother.

But, on the hypothesis that the whole personal estate either belonged to the testator Alfred or may be distributed in this suit, as assumed by the Circuit Judge, the decree is, in many particulars, erroneous in this branch of the case also.

. Neither *Isaac* nor *Susan* being entitled to a decree for their *legacies* now, the decree, in this case, should only allot to *Alfred* his distributable portion, that is, a fourth of two-thirds, as a distributee of his father, and a fourth of a fourth of two-thirds as one of *Sarah's* four distributees, and to *Mrs. Shelby*, and *Isaac*, and *Susan*, as co-distributees of *Sarah*, each one-fourth of a fourth of two-thirds, and also to *Mrs. Shelby* her immediate interest as a *legatee* during widowhood and *Isaac's* minority.

Devisees whose devises are reduced, to make up distributive portions for posthumus children, are not, on that account, entitled to the devises and legacies sooner than the time contemplated by their testator by the will.

And, as a portion of the perishable estate has been retained by *Mrs. Shelby*, under the will, and she is *Alfred's* statutory guardian, there should be no decree in his favor for his distributable interest in the personalty so retained by his mother, who will be accountable to him therefor when there shall be a final settlement of her accounts as his guardian.

But the *executors*, as the testamentary trustees of *Isaac* and *Susan*, will be entitled to a credit in this case against

*Mrs. Shelby* for one half of a fourth of two-thirds of the property so retained by her.

From the amount of the proceeds of the mules ($21,-249 59 cents,) the executors of the testator *Alfred* are entitled to deduct about $2650 the estimated cost of feeding and grazing at *Traveller's Rest* after the said *Alfred's* death until the sale of those mules. *Mrs. V. Shelby* being entitled to a portion of the sum thus to be deducted and the executors of *Mrs. Susannah Shelby* deceased being entitled to the residue of it, subject to distribution under the will of their testator.

As a legatee, *Mrs. V. Shelby* is entitled, during her widowhood and her son *Isaac's* minority, to the residue of the *choses in action*, ($7,423 41,) after deducting one half of two-thirds thereof for the distributable portions therein of *Alfred* and *Sarah;* and she and *Isaac,* and *Susan,* and *Alfred,* are now entitled, absolutely, each to one-fourth of *Sarah's* interest; of the money on hand at her husband's death and the nett proceeds of the mules, she is entitled to a decree now for only so much as devolves on her as one of *Sarah's* distributees—her interest as one of the legatees of that fund not being receivable during *Isaac's* minority.

Posthumous pretermitted child is entitled to no part of a consumable crop used by the family of the father before its birth.

The crop of 1832 had been bequeathed to *Mrs. ·V. Shelby* by her husband, who had a right thus to dispose of it. Of that crop, thus belonging to her, the auditors reported that a portion, valued at $510 53 cents, had been fed to the mules which were afterwards sold by the executors; and that sum is a part of that of about $2650 for which the executors are entitled to a credit in this case, on the amount for which they sold the mules. In so much of the consumable crop as had been thus probably consumed before the birth of *Sarah* she was never entitled to any distributable interest. But *Alfred* was, of course, entitled to one-third of two-thirds thereof, that being his interest as a distributee at the time of his father's death. Then, deducting two-ninths of $500 53 for *Alfred*, his mother will be entitled, as against her husband's executors, to the residue of that sum.

It appears also, from the report by the auditors, that of the aggregate credit to be allowed to the executors for

fattening the mules, $791 were charged for feeding and grazing at *Traveller's Rest* during the year 1834, when *Mrs. V. Shelby* held the farm and slaves in her own right as a devisee. She seems, therefore, to be entitled, as against her husband's executors, to that sum also after deducting one-fourth of two-thirds thereof as Alfred's distributable interest therein, and three-fourths of a fourth of two-thirds, to which he and *Isaac,* and *Susan* are entitled as three of the four distributees of *Sarah,* who had a vested interest therein.

It appears that the executors sold for $351 some of the horses bequeathed to *Mrs. V. Shelby* and paid to her $249 thereof, leaving unpaid $101; she is entitled, as against them, to so much of this unpaid residue as will remain after deducting for Alfred his fourth of two-thirds thereof, as a distributee of his father, and a fourth of a fourth of two-thirds, as one of *Sarah's* distributees, and one-half of two-thirds and a half of a fourth of two-thirds for *Isaac* and *Susan* in the like characters. And *Alfred* will be entitled, as against his mother in her character of guardian, to 5-24ths of the $249 received by her on account of those horses; and *Isaac* and *Sarah* being each entitled to the same proportion thereof, the executors, as their trustees, will be entitled to a credit against *Mrs. Shelby* for these two portions of the $249, and will be hereafter chargable therewith in their settlement of the trust fund of these two children, as they will be with whatever else they shall have received or retained for them.

The residue of the credit of $2650, on account of the mules, that is $1350, being charged against the executors of *Alfred Shelby* deceased for grazing for the year 1833, when their testatrix, *Mrs. Susannah Shelby* deceased was entitled to the land and its proceeds, that sum should, as yet, be retained by them as her executors, and should not be distributed by the decree to be rendered in this case; because Mrs. V. Shelby and her children are entitled thereto as legatees of Mrs. *Susannah Shelby,* at such time and in such proportions as her executors shall deem expedient; and moreover, the pleadings would not

SHELBY'S EX'ORS
vs
SHELBY'S DEVI-
SEE, &c.

The Chancellor
sho'd not decree
in relation to
matters which
are not put in lit-
igation by the
parties in the
pleadings.

It is proper, when
portions for pre-
termitted chil-
dren are raised,
to adjust the ac-
counts of ex'ors
and *deduct* a rea-
sonable compen-
sation for servi-
ces *then* render-
ed.

now authorize any decree distributing the estate of the testatrix.

Mrs. *Shelby's* claim, before the auditors, for maintaining her children should not be allowed in this case, for two reasons: 1st, that matter was neither litigated nor even suggested in the pleadings: 2nd, our interpretation of *Alfred Shelby's will* leads to the presumption that he contemplated no such charge against *Isaac* and *Susan*, during their mother's widowhood, but expected that they would live together as one household on the profits of the estate devised to her: and as to *Alfred*, for maintaining whom his mother may be entitled to reasonable remuneration, there is no necessity to consider her claim at this time, because it may be more appropriately adjusted hereafter, when her accounts as his guardian shall be finally settled.

The principles for determining the extent of *Alfred's* claim against the executors having been already sufficintly defined, and the elements for calculating the aggregate amount for which his guardian is now entitled to a decree against them, as well as the *data* for ascertaining her liability to him for credits to be allowed to the executors on account of his interest in property retained by her, having been clearly indicated, we deem it unnecessary to recapitulate them in formal detail: as to him we will only add that, as against his father's executors, he is entitled, as one of this fathers distributees, to a fourth of two-thirds, and as one of *Sarah's* distributees, to a fourth of a fourth of the mule and money fund and the choses in action, and to the same proportion of the $101 remaining in their hands on account of horses sold, and of the $510 53 and $791 charged and allowed for feeding the mules: and as it appears that the testator *Alfred* intended that the expenses incident to the execution of his will should be charged on the mule and money fund of $22,589 75, a proper *ratio* of a reasonable compensation for the services already rendered by the executors should now be charged to that portion of that fund to which the pretermitted children were entitled and which therefore is to be now distributed; otherwise *Alfred* might

bear no part of the burthen of compensating the executors.

*Alfred* will also be entitled, as against his mother, to a portion of the reasonable rents and profits corresponding with his immediate intrest in the land as an heir of his father and as one of the heirs of his sister *Sarah*, and also, in the same twofold character, to hire of the slaves in the like corresponding proportion.

And the executors, as trustees of *Isaac* and *Susan*, will also be entitled in this case to a credit as against Mrs. *Shelby* for the proper portions of those children in the profits of the land and slaves as two of the heirs of *Sarah's* interest therein, and will be chargable therewith in the final adjustment of their accounts with the said *Isaac* and *Susan*.

But from *Sarah's* portion, to be distributed among her heirs, it would be but reasonable to deduct a liberal allowance to her mother for nursing and maintaining her from her birth to her death.

From the foregoing principles and conclusions it will appear, unless we have erred in our arithmetic, that the decree in favor of Mrs. Shelby, in her own right, is for more than she is now entitled to receive from her husband's executors, and that the decree against them in her favor, as guardian of her son *Alfred*, considerably exceeds the amount to which he is now entitled against *them*.

Upon the return of the case to the Circuit Court, after identifying the personal estate of *Alfred Shelby*, deceased, the auditors who have heretofore acted will be able to report to that Court, without any other hazard or difficulty than such as may be purely arithmetical, the amounts which should be distributed and decreed against the executors in this case, and to make and report the proper partition of the land and slaves as herein-before prescribed.

Before closing this opinion we consider it prudent to repeat comprehensively that, as the bequest of the choses in action and movable property on the farm to Mrs. *Shelby*, during her widowhood or *Isaac's* minority, is the only disposition made of them in the will, she will be entitled, in

---

*Margin notes:*

SHELBY'S EX'ORS
*vs*
SHELBY'S DEVISEE, &c.

Pretermitted child is entitled to a proportion of rents and hire of slaves, equal to their interest in those subjects of distribution.

The mother of a pretermitted child, dying in infancy, and whose distributive share of the father's estate is the subject of distribution with mother and others, is properly allowed a compensation for nursing and maintenance of such child.

the event of her marriage, to one third thereof—the contingent remainder, depending on her marriage, being unbequeathed; and that the residue of the mule and money fund, after deducting the distributable interests of *Alfred* and *Sarah* and the pecuniary legacies to *Isaac* and *Susan*, will, when *Isaac* becomes twenty-one years old, be distributable equally among Mrs. *Shelby*, *Isaac*, and *Susan*, as co-equal legatees of that residuary trust fund; and lastly, that the executors will, of course, retain, for the present, the portions of *Isaac* and *Susan* in the distributable interest of *Sarah* in the choses in action, the mule and money fund, the $351 received for horses sold, the slaves, and the land, the rents and the hire, and the movable property kept and used by Mrs. *Shelby* as a legatee, deducting from the value thereof the said $351; and that, to the extent of those interests of *Isaac* and *Susan* in the $351, the rents and hire, and the movables retained by Mrs. *Shelby*, the executors will be entitled to a credit against her in this case, holding themselves responsible, as trustees, to *Isaac* and *Susan* for the aggregate amount retained and credited as their shares of *Sarah's* distributable interest in the estate, as well as for their interests as legatees of their father, to be settled hereafter, at the proper time, subject to such intermediate charges as their education shall authorize—and leaving, for future settlement and distribution, the item of $1350, for which they obtain a credit in this case for grazing the mules for 1833, and the residue also of the interests of the legatees of Mrs. *Susannah Shelby*, deceased.

We will add that, as the *will* requires the executors to loan the mule and money fund at legal interest, they should make the accruing interest as well as the original capital as productive, periodically, as vigilant men would their own accumulations.

Mandate to the
Circuit Court.
As the decree last rendered by the Circuit Court is, in every branch of it, erroneous and prejudicial in some respects to each of the parties, there will be no decree for costs on the reversal of it.

Decree reversed and cause remanded.

*Harlan* for plaintiffs: *C. S. Morehead* for defendants.