**SANKEY v. SKELLY et al.**

Circuit Court of Appeals, Eighth Circuit.
July 1, 1929.

No. 8132.

Robert B. Keenan, of Tulsa, Okl. (Kenneth K. Wright, A. J. Hill, Vincent Morgan; Benjamin F. Bledsoe, all of Los Angeles;

Cal., and W. T. Hunt, of Tulsa, Okl., on the brief), for appellant.

W. P. Z. German, of Wichita, Kan. (Alvin F. Molony, of Tulsa, Okl., Cliff V. Peery, of El Dorado, Kan., Charles Hill Johns, of Oklahoma City, Okl., George W. Cunningham, of Sand Springs, Okl., and Mike E. Smith, Mark M. McMahon, and Gillis A. Johnson, all of Fort Worth, Tex., on the brief), for appellees.

Before STONE, Circuit Judge, and FARIS and SYMES, District Judges.

FARIS, District Judge. This is an action in equity to compel the transfer to appellant of the one-third part of 71,538 shares of the stock of the Skelly Oil Company, or, in lieu thereof, to account for and pay over to plaintiff one-third of the consideration paid for such shares by defendant Skelly to one Lieuallen, a defendant herein. Defendant Lieuallen was and is the so-called "independent executor" of one John S. Sankey, deceased, appointed and acting as such executor under a statute of the state of Texas.

Testator executed his will in June, 1921, and on November 30, 1921, departed this life, leaving then a daughter by a first marriage, and a mother, a brother, a sister, and his second wife, who has, since his death, again married. The plaintiff is a posthumous child of said testator, born July 10, 1922, and sues here by her mother, Faye Williams, as guardian. Testator devised to his wife, his mother, his brother, and to his sister the sum of $25,000 each, leaving the whole of his residual estate, in trust for his daughter by his first marriage, one Eleanor Ruth Sankey.

It developed that, outside of certain cash and real estate in California, not here involved, testator left personal property of about the value of $560,000, the larger part of which was represented by said 71,538 shares of stock in the Skelly Oil Company, of the par value of $10 per share. At the time of testator's death there were claims outstanding against his estate aggregating about $948,000, of which aggregate the United States was claiming as income and excess profits taxes, for the years 1917, 1918, and 1919, the sum of about $887,000; thus upon the bare face of things rendering the estate hopelessly insolvent.

There was, however, also pending then against defendant Skelly another action, arising out of matters wholly extrinsic here, which had been brought against Skelly by testator. This action upon paper, at least, involved a large sum; but the suit seems to have been dragging its slow length along, with no prospect, when testator died, of an early hearing. In this situation, and on April 21, 1922, Lieuallen, the independent executor, compromised the last-mentioned lawsuit with Skelly, and sold the larger part of the 71,538 shares of Skelly Oil Company stock to defendant Skelly at $6.25 per share, or for a total of $447,112.50. No inherent fraud is alleged in the making of this sale, and it is conceded that the price paid by Skelly for this stock represented its then fair and reasonable value.

Thereafter, as already said, and on May 10, 1922, plaintiff was born. Ordinarily, no probate orders, or supervision, as is conceded by the parties, is had by the probate courts of Texas over the acts, or in order to legalize the acts, of an independent executor; so, plaintiff not being then in esse, naturally, no notice was given to her, and no application for an order of sale was made to the county court, and no such order was gotten or had by Lieuallen, the independent executor, before he sold this stock to Skelly.

The statute of Texas, under which, by the terms of the will of testator, he was authorized to administer and wind up the estate, is unique in legal annals, but short and simple, and it reads thus: "Any person capable of making a will may so provide in this will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate." Article 3436, Vernon's Ann. Civ. St. Tex., 1925.

In February, 1925, and about three years after the stock in controversy was sold by Lieuallen, he compromised the $887,000 tax claim of the United States for the sum of $184,000, which seemingly he paid shortly thereafter.

The statute of Texas, the local laws whereof both sides concede rule this case, provided, as to a pretermitted posthumous child, as follows: "When a testator shall have children born and his wife enceinte, the posthumous child, if unprovided for by settlement and pretermitted by his last will and testament, shall succeed to the same portion of the father's estate as such child would have been entitled to if the father had died intestate; toward which portion the devisees and legatees shall contribute proportionately out of the parts devised and bequeathed to them by such last will and testament." Article 8291, Vernon's Ann. Civ. St. Tex., 1925.

There are other statutes germane to the general subject, obviously intended by the

Legislature to provide for every possible contingency, which might arise. But, among these statutes, that above quoted clearly seems to us to be the one which is here apposite and applicable. It is, beyond cavil or dispute, on all fours with the situation presented by the conceded facts in the record. As forecast, however, two other statutes were repeatedly referred to in argument and mentioned in the briefs, and cases construing them are cited; some reliance is therefore, we must assume, placed upon them. One of these is article 8292, Vernon's Ann. Civ. St. Tex., 1925, which reads thus:

"If a testator having a child or children born at the time of making his last will and testament, shall at his death, leave a child or children born after the making of such last will and testament, the child or children so after-born and pretermitted shall, unless provided for by settlement, succeed to the same portion of the father's estate as they would have been entitled to if the father had died intestate; toward raising which portion the devisees and legatees shall contribute proportionately out of the parts devised and bequeathed to them by such last will and testament, *in the same manner as is provided in article 8291.*" (Italics are ours.)

The other, upon which in the briefs of appellant some argument is bottomed, is article 8293, Vernon's Ann. Civ. St. Tex. 1925, which reads thus:

"Every last will and testament made when the testator had no child living, wherein any child he might have is not provided for or mentioned, if at the time of his death he shall leave a child, or leave his wife enceinte of a child which shall be born, shall have no effect during the life of such after-born child, and shall be void, unless the child die without having been married and before he shall have attained the age of twenty-one years."

In their simplest terms these three statutes respectively, and in the order of their citation herein, provide (a) for a posthumous pretermitted child, when the testator has, at the time of his death, another child or children in esse; (b) for a pretermitted child in esse, and not posthumous, but born after the execution of the will, and not provided for by settlement, and when the testator has another child or children in esse, when he executed the will; and (c) for a child, either in esse or posthumous, at the time of the death of the testator, but not in esse when the will was made, and when, save such child, he shall leave no other children surviving him.

We need not take the trouble to search out the reasons in the legislative mind for passing all of these three statutes. It is enough that they have been passed. The above analyses of them disclose that three obviously different situations are dealt with by them; that one of them is to be applied, when the facts of the concrete case fall squarely within the language of such one of them. Here the admitted facts bring the case precisely within the provisions of article 8291, supra. However, it is clear that there is no difference, so far as concern the provision made and the duties enjoined by article 8291 and article 8292, supra. There is observable a marked difference however, between the two articles last above cited, as compared with article 8293, supra. Under the provisions of the latter article the will dealt with therein becomes either void, or it is postponed in taking effect, if there shall occur the contingency therein set out. If a will made under the situations dealt with by the provisions of articles 8291 and 8292, supra, had been by statute declared void, or had been postponed in taking effect for 21 years, serious and unnecessary hardships would inevitably accrue to another child or other children of the testator. There exists, therefore in the logic of the situation, both a good statutory and a good sentimental and logical reason for applying in the instant case the provisions of article 8291, and refusing to apply the provisions of articles 8292 and 8293, supra.

It is conceded by all parties here that, under the statutes of Texas, all lawful debts of the testator must have been paid before any beneficiary, legatee, or pretermitted child, whether in esse or posthumous, could take under the will here. In fact, the will before us expressly provides for the payment by the independent executor of all the just debts of the testator.

From the very clear language of article 3436, supra, which is the statute creating the office of an independent executor, when the power to pay all just debts, as here, is given by the will, it is plain that such an executor has the power to pay such debts without resorting, for an order therefor, to the county court. In effect, such an executor "acts as an agent of the testator in closing up the estate." Even if "no express power is given by the will to sell the assets of the estate, when there are debts to be paid an implied power in the independent executor to so sell will be raised, and he may, under that implied power, sell in the same manner and to the same extent as though an express power to sell for such purposes had been given. But the existence of debts is necessary to raise

the implied powers." Terrell v. McCown, 91 Tex. 231, 43 S. W. loc. cit. 11. The quoted language used above is taken bodily from the brief of appellant. We assume it is so, because it is a concession. Moreover, the Terrell Case, supra, bears out the quotation, save that it does not definitely rule that the existence of debts is necessary in order that the power to sell may be implied. The matter however, is probably one affecting merely the burden of proof, and, since there is no question here as to the existence of debts against this estate, the question is merely academic.

The appellant does not question the inherent constitutionality of the Texas statute which creates the office of an independent executor. But the contention made is that the appellant never had her day in court, and thus was deprived of due process of law, for that no notice was given to her, and no order of sale was made by the county court, before the sale to Skelly of the stock in controversy. Counsel for both sides seemingly deem this proposition to depend for its correctness upon the question whether the birth of the posthumous pretermitted plaintiff had the effect to revoke the will of the testator, either wholly or pro tanto. The verb "revoke" and the noun "revocation," as used in the appellant's contention, connote nullification, either as a whole or in part. That the will was modified in some aspects by the birth of a posthumous pretermitted child is apodeictic. For the statute itself (article 8291, supra) enjoins such modification. It is obvious that, if the birth of appellant revoked the will, for that it made it wholly void, then since, under the law of Texas, appellant took an undivided one-third of the estate (subject to the payment of debts) as of the time of the death of her father (Nelson v. Galveston, etc., Ry. Co., 78 Tex. 621, 14 S. W. 1021, 11 L. R. A. 391, 22 Am. St. Rep. 81), neither the will here governs, nor is appellant's interest capable of administration by the independent executor as such. Indeed, this would seem to follow, if there was merely a revocation pro tanto; i. e., as to one-third of the estate, which third could not be administered by the independent executor, acting in his capacity as such.

The rule at common law, whereby the title to personal property vested in the executor, was clearly changed by the provisions of article 3314, Vernon's Ann. Civ. St. Tex. 1925, which substantially provides that, on the death of the owner leaving a valid will, the property devised and bequeathed shall vest at once in the devisees or legatees, and that the property of an intestate, shall likewise vest at once in the heirs at law, subject, however, to the payment of the debts of the deceased former owner.

We are constrained to conclude that, as to a posthumous pretermitted child, whose rights are governed, and who takes, as here, under Article 8291, supra, the will of testator was not revoked, either in whole or in part, but was merely modified by the provision of the above statute, that such child should take the "same portion (i. e., proportion) as such child would have been entitled to if the father had died intestate." The word "portion" is a word of measure or comparison, and not a word of grant. If the statute had ended with the language of the above quotation, it could, upon the authority of Chicago, etc., R. Co. v. Wasserman (C. C.) 22 F. 872, and numerous other cases cited and relied on by appellant, well have been ruled that the will here was revoked by the birth of appellant. But article 8291, supra, goes further, and provides how the portion provided for such posthumous pretermitted child shall be made up; that is, by pro rata contributions from devisees and legatees out of the portions devised and bequeathed to such devisees and legatees by the will.

The will and its continued existence is thus expressly recognized by the language of the statute itself. If the will were nullified, the property would descend to the heirs at law pursuant to the statute of descent and distribution, and there would be no question remaining as to devisees and legatees, because all such legatees and devisees would be wiped out when the will became a nullity.

The Wasserman Case construed a statute of Nebraska. We have no quarrel with the ruling there made, for there the applicable statute of Nebraska read thus: "When any child shall be born after the making of his parent's will, and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be assigned to him as provided by law in cases of intestate estate, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child." Section 148, c. 23, Comp. Stat. Neb. 1881.

Both parties to the controversy here concede that the precise question herein up for judgment has never been squarely ruled by any of the appellate courts of Texas. It is true that the Supreme Court of Texas, in the case of Morgan v. Davenport, 60 Tex. 230, which is greatly relied on by appellees,

had occasion to construe the language of a then existing statute now embodied in article 8292, supra, which we quote above. The court held that the will in that case was not revoked under the provisions of the statute then under examination, saying, inter alia, this: "We therefore hold that under the statutes of this state there can be no such thing as the revocation of a valid written will, unless the same be revoked in one of the manners prescribed by the statute," and the "manners" referred to were by "destroying, canceling or obliterating the same," or "by a subsequent will, codicil or declaration in writing made as aforesaid." And the court further said that revocation by implication was not permissible under the laws of Texas, and particularly, that the situation provided for by the language now contained in article 8292, supra, did not have the effect to revoke by implication the will therein dealt with.

Mere casual examination discloses that the provision made by article 8292, supra, for an after-born (that is, born after the will, but before testator's death) pretermitted child is wholly similar to that made by article 8291, supra, for a posthumous pretermitted child. So the situation before the Supreme Court of Texas, in the case of Morgan v. Davenport, supra, was wholly analogous to the situation here, and the language construed there was in effect precisely like the language by which we are here confronted and called on to construe. And so we are constrained to hold, not only from the reason of the thing, but on the authority of the Davenport Case, that the will here was not revoked.

The case of Parker v. Swain (Tex. Civ. App.) 223 S. W. 231, on which appellant greatly relies, does not at all aid her. The only point stressed in that case, or considered by the court, was whether the word "testator," as used in article 8292, supra, included a testatrix. If a point similar to that here vexing was among the facts, it was neither stressed by counsel nor noticed by the court in the opinion.

We come now to the question whether (the will being valid and not revoked) the independent executor had the right to sell this stock to pay debts of the estate. All parties concede, as said already, that the right of appellant to take anything, even as an heir, is subordinate to the rights of creditors. When this stock was sold by the independent executor, the total assets visible and known and in the hands of the executor were roughly $600,000. The claims then being put forward by creditors amounted roughly to $948,000. Of the latter sum, the United States alone was then claiming, as a debt against this estate, the sum of $887,113.96, for delinquent income and excess profits taxes for the years 1917, 1918, and 1919, and were threatening to collect by distraint. Apparently, then, at the time of the sale complained of, and as the situation then appeared, the estate was hopelessly insolvent. But fortuitously it occurred subsequently, and long after the sale, that an amicable adjustment was made with the United States, whereby their entire claim was compromised and settled by the executor upon the payment by him to the United States of the sum of $184,000. This payment was made in the early part of the year 1925, long after the stock was sold.

We are of opinion that the executor, being in office as such under an unrevoked will, had the right to sell this stock to provide a fund to pay these debts; that appellant, as a posthumous pretermitted child, had no rights in the property sold different from, or superior to, any other or the other child of testator; that since, under article 3436, supra, he could, as to other children or the other child, sell property, in order to pay debts, without giving notice and without resorting to the county court for an order therefor, he had the right to do this, so far as concerns the rights of appellant.

It follows that in our opinion the learned trial court reached a correct conclusion in the case, and it ought to be affirmed, which accordingly we order.