EMMA SMITH, and another, Appellants.

*vs.*

LUCY A. HOWARD, Administratrix.

Waldo.    Opinion Febuary 2, 1894.

*Probate. Widow's Allowance. Non-resident Decedents. Stat. 1821, c. 51, §§ 8, 39; R. S., c. 65, §§ 21, 36; Pub. Stat. Mass. c. 135, § 2.*

Courts of probate are tribunals of special and limited jurisdiction. They exercise only such powers as are directly conferred upon them by the statutes, and such as may be incidentally necessary to the execution of these powers.

A judge of the probate court in this State has no authority to decree an allowance to the widow of a non-resident decedent from assets in this jurisdiction on which there is ancillary administration. The widow's claim for an allowance is not only controlled by the law of the State where the deceased husband had his home at the time of his death, but the decree therefor must be made by the probate court in the State of the decedent's domicil.

Whether the widow's situation would have been improved, if she had obtained from the court in Massachusetts a decree for an allowance with a representation of insufficient assets there to respond to it, and had then asked to have the claim satisfied from the assets in this State, subject to the claims of creditors residing here, *quære.*

AGREED STATEMENT.

*Jos. Williamson,* for Emma Smith.

*R. F. Dunton,* for Lucy A. Howard.

The allowance to the widow is to be determined by the law of the domicile of the husband at the time of his decease ; but it does not follow that the allowance must be made, if at all, in the state of his domicile. Personal estate, must in all cases be distributed according to the law of the domicile of the deceased, yet by express provision of statute in this State, such property

of a deceased resident of another State may be distributed here, in accordance with the law of the domicile of the deceased. R. S., c. 65, § 36; Woerner's American Law, of Ad. § § 39, 167; Croswell's Exors. and Admrs. § 577; *Kersey* v. *Bailey*, 52 Maine, 198.

The question as to whether under our laws, the allowance would take precedence of the claims of resident creditors does not arise in this case, first, because no creditor is contesting the allowance; and second, no appeal having been taken from the decree of allowance, it is conclusive, if the probate court in this State has authority in any case, under any circumstances, to make an allowance to the widow of a deceased resident of another State.

The statutes of Massachusetts, as well as the statutes of Maine, make ample provision for the support of the widow pending the settlement of estates; yet if a husband domiciled in Massacusetts, dies leaving all of his personal estate in the State of Maine, (which is practically this case,) there is no power in the courts of Massachusetts or Maine, or of both States combined, to provide for the temporary support of the widow from his estate, unless the probate court in this case had jurisdiction over the petition for allowance. The personal estate cannot lawfully be transmitted to Massachusetts, until the creditors in this State have been ascertained and paid, or until the completion of ancillary administration.

SITTING: PETERS, C. J., LIBBEY, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WHITEHOUSE, J. This is an appeal from the decree of a judge of probate, allowing the account filed by the defendant, as administratrix on the estate of her husband, whose domicil was in Massachusetts, at the time of his death. The appellants are the children and heirs of the decedent, and the only item in the account to which they object is a credit of $700, being the amount granted to the widow, as her allowance, by the judge of probate in this State. The defendant took out the ancillary administration in this State, in May, 1892, on personal property

amounting to $850. In June of the same year, she took out the principal administration in the place of the domicil of the decedent; but the entire estate in that jurisdiction, small in amount, was exhausted in effecting a settlement by compromise with the creditors in that State. No allowance was made to the widow, or applied for by her, in Massachusetts. The allowance in question was made by the judge of probate, in this State in July, 1892.

The only question presented by the agreed statement, accompanying the appeal, is whether the judge of probate in this State, had jurisdiction and authority to decree this allowance to the widow of a non-resident decedent, from assets in this jurisdiction on which there is ancillary administration.

In determining this question, a new one in this State, it is proper to be reminded that courts of probate are tribunals of special and limited jurisdiction only. They are wholly creatures of the legislature. They exercise only such powers as are directly conferred upon them by legislative enactment, and such as may be incidentally necessary to the execution of these powers. Unless authority for the exercise of jurisdiction in a given case can be found in the statutes, given either expressly or by implication, the proceeding is void. Woerner's Am. Law of Ad. § 142; *Fowle* v. *Coe*, 63 Maine, 248.

It is furthermore important to observe that, in order to discover the true scope and purpose of statutes defining the powers of these courts, they are to be examined in the light of the common law, which it may be supposed they were intended to modify, affirm or supersede, or by which their practical operation might be affected. In this case it is proper to consider that the statutes of every State are enacted primarily with reference to the citizens within its own jurisdiction; that it is the right of a State to pass laws for the appropriation of any property of a decedent within its limits to the payment of the just claims of creditors residing there, even 'if not in entire harmony with the spirit of comity between States; and that letters of administration have no legal force or effect beyond the territorial limits of the State in which they are granted. *Saun-*

*ders* v. *Weston*, 74 Maine, 92; *Smith* v. *Guild*, 34 Maine, 443; Story Confl. of Laws, § 512. ' These statutes are also to be construed with due regard to the universal rule which Chancellor Kent declares to be as "settled principle of international jurisprudence, and one founded on a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to and distribution of, personal property wherever situated, is governed by the law of the country of the owner's or intestate's domicile at the time of his death, and not by the conflicting laws of the various places where the goods happened to be situated. 2 Kent's Com. 571; *Gilman* v. *Gilman*, 53 Maine, 184; Wharton on Confl. of Laws, § § 604, 627. The principle last stated, as will presently be seen, is expressly recognized and affirmed in our statutes. (R. S., c. 65, § 36.)

In the subdivision of chap. 65, R. S., entitled, "Allowances to widows and others," is the following in section 21 : "In the settlement of any intestate estate, or of any testate estate, which is insolvent, or in which no provision is made for the widow in the will of her husband, or when she duly waives the provisions made, the judge may allow the widow so much of the personal estate, besides her ornaments and wearing apparel, as he deems necessary, according to the degree and estate of her husband, and the state of the family under her care." The last subdivision of this chapter is entitled, "Distribution of the estates of deceased non-residents." In the first section of it (§ 36), is the following : "When administration is taken in this State on the estate of any person, who at the time of his death, was not an inhabitant thereof, his estate found here, after payment of his debts, shall be disposed of according to his last will . . . if he left any ; but if not . . . his personal estate shall be distributed according to the laws of the state or county of which he was an inhabitant ; and the judge of probate, as he thinks best, may distribute the residue of said personal estate as aforesaid, or transmit it to the foreign executor or administrator, if any, to be distributed according to the law of the place where the deceased had his domicile." These are modified forms of

the original enactments of 1821 (§ § 8, & 39, c. 51), which were adopted from Massachusetts. In that State the corresponding statutes were enacted at different periods, that relating to ancillary administration, in the form as adopted, having been enacted in Massachusetts, in 1818. None of the enactments providing for administration on the estates of deceased non-residents in Maine or Massachusetts at any time, contained any express reference to a widow's allowance.

It is manifest from the history of these two sections in our Revised Statutes above quoted, and their present collocation in chapter 65, as well as from a comparison of their respective terms and provisions, that section 21 has reference solely to the estates of deceased residents. It was not designed to embrace the estates of deceased non-residents. With respect to the latter, the jurisdiction of the court of probate is clearly defined and limited in section 36. In case of an intestate, it is simply the duty of the judge to order the residue of the estate, after the payment of debts, to be distributed here, or transmitted to the foreign administrator, to be distributed, in either event, according to the law of the place where the deceased had his domicile. So long as there are creditors within the jurisdiction of the ancillary administration, they have a legal right to insist upon having all the assets found there appropriated to the payment of their debts. The court has no authority to order the assets to be transmitted under this statute, until the creditors here are all paid, and it has no jurisdiction to determine that there are no unpaid creditors here until the expiration of the time fixed by law for presenting their claims. *Newell* v. *Peaslee,* 151 Mass. 601 ; 1 Woerner's Am. Law of Ad. § 167. For aught that appears all the assets inventoried in this jurisdiction may yet be required to pay the claims of creditors residing here.

No authority to make an allowance to the widow of such non-resident decedent is expressly conferred by this section ; nor is it granted by implication as necessary to the discharge of the duties that are expressly imposed. A widow's claim for an allowance is not deemed a matter of legal right either in this

State or Massachusetts. It rests merely in the discretion of the judge of probate. *Kersey* v. *Bailey*, 52 Maine, 198 ; *Dale* v. *Bank*, 155 Mass. 141. It is not a fixed and absolute interest in the estate. *Additon* v. *Smith*, 83 Maine, 554 ; *Adams* v. *Adams*, 10 Met. 170. It is not a debt due from the estate nor a distributive share of it. It is not included in the " expenses of administration." *Washburn* v. *Hale*, 10 Pick. 429.

The widow's allowance was originally designed to afford a temporary supply for the widow and her family pending the settlement of the estate. It had its origin in a humane and beneficent public policy that seeks to encourage the continuance of the family relations by providing against the exigencies arising from the death of the head of the family. *Bailey* v. *Kersey*, *supra*. When, therefore, a claim for such an allowance from the personal property of her husband is presented by the widow it is held with substantial uniformity, that the question must be determined and the amount regulated by the law of the place where the family resided and had their home at the time of the husband's death. *Gilman* v. *Gilman*, *supra* ; *Shannon* v. *White*, 109 Mass. 146 ; Woerner, *supra*, § 89. It is conceded by the defendant that such is undoubtedly the law ; but it is still contended that without express statutory provisions, after the analogy of the distribution of the assets, and as a matter of comity, the allowance in question was properly granted by the court in this State, and should be sustained if made in accordance with the law of Massachusetts. Whatever may reasonably be urged, *ex comitate* in favor of such a practice in the courts of the *situs*, in cases where there are no debts, towards domiciliary jurisdictions where the amount of the allowance is definitely fixed by statute, serious difficulties are encountered in attempting to apply it here.

Section 2 of c. 135 of the Pub. Stat. of Massachusetts, is made a part of the agreed statement, and is as follows :

" Such parts of the personal estate of a deceased person as the probate court, having regard to all the circumstances of the case, may allow as necessary to his widow, for herself and for his family under her care, or, if there is no widow, to his minor

children, not exceeding fifty dollars to any child, and also such provisions and other articles as are necessary for the reasonable sustenance of his family, and the use of his house and the furniture therein for forty days after his death, shall not be taken as assets for the payment of debts, legacies, or charges of administration."

It will be seen that this statute differs in important particulars from the corresponding statute in this State. There, in case of a will, the allowance may be granted to the widow in addition to the provisions for her in the will ( *Williams* v. *Williams*, 5 Gray, 24) ; here, by the terms of the statute it is contingent on her waiver of the provisions in the will. It is also manifest that in other respects the nature and office of the allowance are essentially unlike in the two States. There the statute aptly illustrates the original purpose of the allowance, as stated above, while in this State the practical construction has been much more liberal, and the authority to grant an allowance is not confined to cases of mere temporary relief. *Bailey* v. *Kersey*, 52 Maine, 198. In the recent case of *Dale* v. *Bank*, 155 Mass. 144, the court says upon this point : " As a result of a uniform line of authorities, the rule is established that the court has no right under the statute to attempt to modify the provisions of a will, or to change the course which property of an intestate takes under the statute of distribution, or to take the estate from creditors to provide for the future of an unfortunate widow who is left dependent on her own resources. The purpose of an allowance is to provide for the necessities of the widow and minor children for a short time, until they have an opportunity to adjust themselves to their new situation." This is strikingly at variance with the practical construction of the Maine statute ; and if the defendant would avail herself of the rule of comity which she invokes, she should at least be able to make it affirmatively appear that the allowance was in fact made in accordance with the Massachusetts statute as construed by the courts of that State. It is not expressly stated, however, to have been made with any reference whatever to the Massachu-

setts statute. On the contrary it may fairly be inferred, from the statement of the case, and from the comparatively large amount of the allowance, that it was made under the influence of the law and practice of our own State, as in ordinary cases of domiciliary administration here.

But if it be conceded that the judge of probate intended to make the allowance in accordance with the law of Massachusetts, there are still insuperable objections to such a practice under circumstances like those here stated. In the first place, it would be incompatible with the rights of creditors under the provisions of section thirty-six which require all debts to be paid before any of the assets can be remitted to the place of the domicil. In this case, there may be no creditors in Maine; but that question has not yet been determined, as nearly a year yet remains within which the claims of creditors may be enforced.

Again, the domiciliary court is the appropriate one to determine the amount of the allowance. That is not fixed by the statute, in Massachusetts, but is left entirely to the sound discretion of the judge of probate. In performing this duty he is to have " regard to all the circumstances of the case." The social position of the husband at the time of his death, as indicating the demands which might be made on the widow; the style in which she has been accustomed to live, the amount of the estate, and the amount of her separate property, the length of their cohabitation, and the size of the family under her charge, the place of residence, and the treatment of each to the other, and many other like considerations, may all be taken into the account in fixing the amount of the allowance. *Allen* v. *Allen*, 117 Mass. 27; *Hollenbeck* v. *Pixley*, 3 Gray, 521; *Washburn* v. *Washburn*, 10 Pick. 374; *Gilman* v. *Gilman*, 53 Maine, 184; *Walker*, *Applt.* 83 Maine, 1. All these things can be more fully and correctly ascertained, and all branches of inquiry respecting them more easily prosecuted in the jurisdiction where the family had their home. Their social position and style of living can be better understood and appreciated in the community in which they have lived. "The place of the domicile is where we should look to ascertain the real condition of the decedent's affairs."

(*McNichol* v. *Eaton*, 77 Maine, 249). It appears that the decedent's domicile was in Waltham in the State of Massachusetts at the time of his death. It does not appear that he ever resided in Maine, or that the defendant has ever resided here either before or since the death of her husband. Her domicil was merged in that of her husband.

Another practical difficulty would be met in the application of such a rule of comity. If the defendant is entitled to have an allowance from the assets found in this State, she would have an equal right to it in every other state in which personal property of her husband might be found. Embarrassing questions respecting the numerous claims that might be presented in different jurisdictions would thus inevitably arise.

The conclusion is that the judge of probate in this State had no authority to make the allowance to the widow on the facts stated, and that the item of seven hundred dollars, was improperly allowed in the defendant's account.

Whether the defendant's situation would have been improved if she had obtained a decree for an allowance from the probate court of Massachusetts, with a representation of insufficient assets there to respond to it, and had then by proper application asked to have the claim satisfied from the assets in this State, subject to the claims of creditors residing here, or whether further legislation authorizing such procedure would be necessary or expedient, are questions not before this court. The question before us has seldom arisen, and no decision involving the precise state of facts here presented has been brought to the attention of the court. But eminently respectable authorities involving a similar state of facts strongly support the views above stated. In *Richardson* v. *Lewis*, 21 Mo. App. 531, the domicil of the decedent and his family was in Illinois at the time of his death, and the widow obtained an order from the court there for the payment of an allowance under the laws of that state. There were insufficient assets in Illinois to satisfy the claim, but further assets were found in St. Louis. Thereupon the widow applied to the court in St. Louis for the allowance provided for by the laws of Missouri, and it was held that the

Missouri statutes authorizing such allowance had no application to the widows of non-resident decedents, and the application was denied.   In the opinion by Judge Thompson the court says : " We rest our decision upon the universal principle of the common law that the succession of the personal property of a deceased person is governed exclusively by the law of his actual domicile at the time of his death." . . . "The statutes invoked are a temporary provision for the widows of deceased persons analogous to the provisions of statutes exempting certain property of debtors from execution.   The very nature of such an allowance precludes the idea that the widow can be entitled to it in any state except that of the husband's domicile ; for otherwise she would be entitled to this exemption from the claims of his creditors in every state in which he might have personal property."

In *Medley* v. *Dunlap*, 90 N. C. 527, the decedent had his domicile in Arkansas at the time of his death.   His widow soon after removed to North Carolina and there applied for an allowance under the laws of that state.   It was held that she was not entitled to it ; but in the opinion the court says : " If the laws of Arkansas provide for such an allowance, the plaintiff ought to have applied there and had her claim allowed and paid, or, if there were not sufficient assets to pay it there, then she might have her claim thus allowed, satisfied out of assets in this state, upon proper application to the administrator here.   But she cannot reach the assets of her deceased husband here in any other way.   See also *Simpson* v. *Cureton*, 97 N. C. 113 ; *Spier's Appeal*, 26 Pa. St. 233 ; *Shannon* v. *White*, 109 Mass, 146 ; Woerner's Am. L. of Ad. § 80.          *Appeal sustained.*