## In Equity.

JOSEPH M. BRIGHT et als.

Executors of the last will and testament of John E. Chapman

*vs.*

LUCY CHAPMAN.

Penobscot.    Opinion December 30, 1908.

*Husband and Wife.    Marriage Settlements.    Same Enforceable in Equity.    Widow's
Allowance.    Revised Statutes, chapter 63, section 6.*

Section 6 of chapter 63, Revised Statutes, which, among other things, pro-
vides that "a husband and wife by a marriage settlement executed in
presence of two witnesses before marriage, may determine what rights each
shall have in the other's estate during the marriage, and after its dissolu-
tion by death, and may bar each other of all rights in their respective
estates not so secured to them," is restricted to the rights which either
party to the marriage settlement may have in the estate of the other.

Marriage settlements may be made which contain agreements as to matters
growing out of the marriage relation other than "rights" in the estate of
one or the other.

After dissolution of the marriage by death the marriage settlement provided
for by the statute is cognizable in the courts of common law.

Equity will enforce ante-nuptial settlements, and especially is this true in
the case of a widow's claim for an allowance inasmuch as an ante-nuptial
agreement is no defense in a court of probate to her petition for an allow-
ance.

Where in a marriage settlement it was provided that the intended husband
should assign to the intended wife a certain paid up policy of life insurance
held by him for the sole use and benefit of the intended wife, in case she
survived him, "to be paid in full satisfaction of any and all claims by
descent or otherwise" which the intended wife might have as widow in her
intended husband's estate in event of his decease and which said policy
was assigned to the intended wife, and the intended wife covenanted and
agreed that the marriage settlement should be "a bar both in law and in
equity to any claim she may make to any part of the real or personal estate"
of the intended husband, and after the execution of the settlement the
parties thereto were joined in marriage and the wife having survived her
husband, filed a petition as his widow for an allowance out of his personal

estate, it was *held* that the expressions, "any and all claims by descent or otherwise," and "any claim she may make to any part of the real or personal estate of the husband," were amply broad to cover the claim of the widow for an allowance, and that she should be enjoined from prosecuting her claim for an allowance.

In equity.    On report.    Injunction to issue.

Bill in equity brought by the executors of the last will and testament of John E. Chapman, late of Bangor, deceased testate, to restrain the defendant, the widow of said deceased, from prosecuting in the Probate Court her claim for an allowance out of the personal estate of her deceased husband.    The plaintiffs contended that the defendant was barred from prosecuting her claim for an allowance by reason of a marriage settlement entered into by her and her said husband previous to their marriage.    The defendant's answer to the bill and the plaintiffs' replication were duly filed.

After a hearing thereon duly had, it was agreed to report the case to the Law Court "upon bill and answer and replication and admissions of record and so much of the documentary evidence as is legally admissible, for the determination thereof."

The case is stated in the opinion.

*Wilford G. Chapman*, for plaintiffs.

*Matthew Laughlin*, for defendant.

SITTING:    EMERY, C. J., SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

BIRD, J.    On the twentieth day of March, 1905, John E. Chapman, then about seventy years of age, and Lucy Thomas entered into a marriage settlement which was executed in the presence of two witnesses, as provided in R. S., c. 63, § 6.    Subsequently on the same day they were married and thereafter lived as husband and wife at Bangor, Maine, the residence of the husband, until his death on the eighteenth day of March, 1907.    He left, beside the widow, four adult children.    It does not appear that the widow then had living children by a former marriage.

The will of the husband was duly admitted to probate in the month of April following his decease and letters testamentary issued

to complainants, all of whom qualified and entered upon the discharge of their duties.

The will makes no mention of the widow, save to direct the trustees of the testator, to whom he gives, for the benefit of his children, all his other property, to do all things needful to secure to his wife, surviving him, the sum provided for her in the marriage settlement.

The inventory of his estate shows personal property to the amount of $16,924.90 and real estate to the amount of $22,500.00, or a total of $39,424.90. The debts of deceased with expenses and charges will not exceed two thousand dollars.

The marriage settlement recites that in consideration of their intended marriage it is agreed by the parties that the rights of each in the estate of the other during marriage and after its dissolution by death shall be determined by the marriage settlement and that the "settlement shall bar each of all rights in the estate not so secured, and for the further purpose of making a pecuniary provision for the benefit of said intended wife, instead of her right and interest by descent in said intended husband's estate, consented to by her by becoming a party to this agreement, in order to bar her right and interest by descent in her intended husband's lands," and it also recites his ownership of a paid up policy of life insurance, then of the paid up value of $4419.00, which he has agreed to assign to her for her sole use and benefit, in case she survives him, "to be paid in full satisfaction of any and all claim by descent, or otherwise, which said party of the second part [the intended wife] may have as widow, in her intended husband's estate, in the event of his decease."

Following the recitals are the mutual agreements of the parties by the first of which the policy of insurance is assigned to the intended wife provided that all dividends and accumulations during his life shall be hers, that the proceeds of the policy shall be paid to the wife only after the marriage and after the death of the husband and that if the wife does not survive the husband after the marriage, the assignment shall be void and the policy shall revert to him.

The settlement concludes as follows :

"Second.   If said party of the second part shall not survive said party of the first part, after the solemnization of said intended marriage, all of her estate shall descend according to the laws of Maine for the descent of estates of persons dying intestate, unless she shall change the same by will, in which case said party of the first part relinquishes all rights in the estate of his said intended wife, except such as may be provided for him in said will.

"Third.   Said party of the second part hereby consents to accept said pecuniary provision here made for her for the consideration aforesaid and hereby covenants and agrees that this instrument shall be a bar, both in law and in equity, to any claim she may make to any part of the real or personal estate of the said party of the first part, except as herein provided."

On the twenty-seventh day of April, 1907, the widow received from the insurance company which issued the policy of insurance its paid up value, amounting with accumulations to the sum of $4433.00, which however, although retained by her, she denies was paid to her in satisfaction of any claim for an allowance out of the personal estate of her deceased husband.

On the twenty-eighth day of May, 1907, the widow filed in the Probate Court a waiver of any specific provision made for her in the will, in so far as any was made, in which she claims an allowance out of the personal estate of the deceased, refuses to repudiate the marriage settlement, declares her willingness to abide by it in so far as her rights in said estate are precluded by it, and, while admitting herself precluded by it from any right or interest in the property and estate of her deceased husband, "claims that she is entitled to claim an allowance out of the personal estate of the deceased."

On the thirtieth day of July, 1907, the widow filed in the Probate Court her petition for an allowance and the complainants thereupon filed their bill in equity asking that defendant be enjoined from prosecuting or maintaining her petition for an allowance before the Probate Court.

It is the contention of defendant that the whole subject of marriage settlements is covered by R. S., c. 63, § 6 ; that this provision does not authorize a widow to bar herself from an allowance, that it supersedes any common law rules in regard to the same and that this court in the exercise of its equity powers cannot restrain the widow.

The section invoked provides that husband and wife may determine what rights each shall have in the other's estate during marriage, and after its dissolution by death, and may bar each other of all rights in their respective estates not so secured to them. Even under this section recourse must be had to equity for the enforcement of the marriage settlement in so far as it concerns rights of one party in the estate of the other during marriage. *Wentworth* v. *Wentworth,* 69 Maine, 247, 254 ; *Miller* v. *Goodwin,* 8 Gray, 542, 543 and 544. After dissolution of the marriage by death the settlement provided for by our statute is cognizable in the courts of common law. *Wentworth* v. *Wentworth,* 69 Maine, 247 ; *Sullings* v. *Richmond,* 5 Allen, 187, 192. But section six, chapter 63, R. S., is restricted to the rights which either party to the marriage settlement may have in the estate of the other, see *Wentworth* v. *Wentworth,* 69 Maine, 247, 253, and it does not follow that the section quoted covers the whole field of marriage settlements. On the contrary it is clear that marriage settlements may be made which contain agreements as to matters growing out of the marriage relation other than "rights" in the estate of one or the other. *Wentworth* v. *Wentworth,* 69 Maine. 253 ; *Sullings* v. *Richmond,* 5 Allen, 187, 192 ; *Jenkins* v. *Holt,* 109 Mass. 261, 262. Equity will enforce such ante-nuptial settlements ; *Sullings* v. *Sullings,* 9 Allen, 234, 236 ; *Tarbell* v. *Tarbell,* 10 Allen, 278, 280 ; *Butman* v. *Porter,* 100 Mass. 337, 339, and especially is this true in the case of a widow's claim for an allowance inasmuch as an ante-nuptial agreement is no defense in a court of probate to her petition for an allowance. *Wentworth* v. *Wentworth,* 69 Maine, 247, 255.

It is also urged by defendant that the marriage settlement is not broad enough to include a claim of the widow for an allowance.

To this we do not assent.  The widow's demand for an allowance, or right to demand an allowance, is commonly, if not invariably, known in our courts as the widow's claim for an allowance.  *Gowen's App.*, 32 Maine, 516, 517 ; *Kersey* v. *Bailey*, 52 Maine, 198, 199 ; *Tarbox* v. *Fisher*, 50 Maine, 236 ; *Smith* v. *Howard*, 86 Maine, 203, 207 ; *Paine* v. *Forsaith*, 84 Maine, p. 71 ; *Brown* v. *Hodgdon*, 31 Maine, 65, 69.

The language of the indenture "to be paid. in full satisfaction of any and all claim by descent, or otherwise" which the wife may have in her intended husband's estate and the words of the third paragraph "a bar, both in law and in equity, to any claim she may make to any part of the real or personal estate" of the husband, are amply broad to cover a claim for a widow's allowance.

Defendant claims that the settlement is inequitable by reason of the inadequacy of the provision made for her.  It does not appear from the record that it was not entered into understandingly nor that it was procured by fraud or deceit.  Moreover, as we have seen, defendant retains the avails of the policy of insurance, declines to repudiate the settlement and is willing to abide by it in so far as her rights in the husband's estate are concerned except that she claims an allowance and that the settlement is no bar thereto.. A question of construction only is presented which has already been decided adversely to defendant.  See *Paine* v. *Hollister*, 139 Mass. 144, 145.

*Injunction to issue as prayed.*