## MANN, by ELLIOTT v. PEOPLES–LIBERTY BANK & TRUST CO. et al.

## MANN, by KOHRMAN v. PEOPLES–LIBERTY BANK & TRUST CO. et al.

Court of Appeals of Kentucky.
March 27, 1953.

---

Edward J. Elliott and John A. Kohrman, Covington, for appellants.

Charles S. Adams and Earl Rodney King, Covington, for appellee.

MILLIKEN, Justice.

This appeal involves the construction of the will of Gilbert C. Mann, Sr., who died at the age of forty-eight on January 30, 1952, a domiciliary resident of Kenton County, Kentucky, with a lucrative proprietory business across the Ohio River in Cincinnati, Ohio. At the time his will and codicil were executed, on November 7, 1947, and March 11, 1948, respectively, Mr. Mann's family consisted of his wife, Frances S. Mann, and their son, Timothy Gilbert Mann, who was born January 26, 1946. By testamentary trusts, Mr. Mann attempted to secure the welfare of his wife and young Timothy, but on March 15, 1950, another son, Gilbert C. Mann, Jr., arrived with legal consequences which his father, no more than he, apparently appreciated. Mr. Mann's failure to revise his will after the birth of Gilbert, Jr., introduced the complicating factor of a pretermitted child into his testamentary plans, and compelled his executor to ask the court for instructions.

It is apparent from the provisions for Timothy in the will, and conceded by all litigants, that Mr. Mann had no intention to exclude his children as a class. As a consequence, Gilbert, Jr., is a pretermitted child who, under the provisions of KRS 394.380(2), shall succeed to the portion of his father's estate "that he would

have been entitled to if the testator had died intestate; toward raising which portion the devisees and legatees shall, out of what is devised and bequeathed to them, contribute ratably, either in kind or in money, as the court deems proper." The possible effect of this pretermission on the powers of the executors and trustees under the will has resulted in the widow, Frances S. Mann, refusing to qualify as either co-executor or co-trustee until it can be determined whether it would be better for both herself and her children to renounce the will under the provisions of KRS 392.080, and elect to take her dower and distributable share of her husband's estate. Ordinarily, this statutory power of renunciation must be exercised within a year of the probate of the will which occurred February 5, 1952, but the chancellor granted her "to any time within two months after the determination of her rights in this estate by our courts by a judgment which shall have become final by expiration of time for appeal or affirmance on appeal." Where an intelligent election is impossible, as we believe it is in the case at bar, the chancellor has the power to extend the time for making an election, Smither v. Smither's Ex'r, 9 Bush. 230, 72 Ky. 230; Brewer's Ex'r v. Smith, 242 Ky. 175, 45 S.W.2d 1036, if requested to do so within the one-year period. Moise v. Moise's Ex'r, 302 Ky. 843, 196 S.W.2d 607.

■ As heretofore intimated, most of this estate is located in the State of Ohio where the Fifth-Third Union Trust Company of Cincinnati qualified as administrator with the will annexed. The Probate Court of Hamilton County, Ohio, under the authority of Ohio General Code, § 10509–78, in the exercise of its discretion set aside to Mrs. Mann and her children the sum of $20,000 as a year's allowance for their support, to be charged against the real estate of the decedent in Ohio in accordance with the statute. The Ohio statute expressly provides "that no such allowance shall be set off if the laws of the state of decedent's residence make provision for year's allowance for widows and children of resident decedents." We have no statutory provisions in Kentucky for

the granting of living allowances to the widows and minor children of our deceased citizens. The power to grant such an allowance in these circumstances is dependent upon statutory provisions, 21 Am.Jur., Executors & Administrators, § 314, page 560, and it is said in 21 Am.Jur., Executors & Administrators, § 316, page 561, "A probate court of one state does not have jurisdiction to decree an allowance to a widow of a nonresident decedent from property in its jurisdiction on which there is ancillary administration," citing Smith v. Howard, 86 Me. 203, 29 A. 1008, 41 Am. St.Rep. 537, and Jaeglin v. Moakley, 236 Mo.App. 254, 151 S.W.2d 524, as authority for the statement. However, in neither of those cases was there statutory authority to make allowances, and both decisions stress the fact that no such allowances were made at common law.

■ In discussing the provisions of the Ohio General Code as to the administration, in Ohio, of the estates of nonresident decedents, the Probate Court of Montgomery County, Ohio, in its opinion In re McCombs' Estate, 80 N.E.2d 573, stresses the right of Ohio, as a phase of procedural as distinguished from substantive law, to control the administration of property of a nonresident decedent located in Ohio and, we infer, to grant a living allowance to a nonresident widow and minor children, as authorized by statute, without violating the comity between the states. It is significant that the granting of the allowance is discretionary with the Ohio Probate Judge, and does not come to the widow as a matter of right as in the case of an exemption. It is also significant that the Ohio statute, G.C. of Ohio, § 10509–78, stipulates that the allowance shall be charged to the Ohio real estate of the estate of the decedent, the devolution of which is controlled by Ohio law. The devolution of personalty of the estate located in Ohio is not involved. Consequently, we do not believe the Ohio statute which authorizes the allowance as a charge against Ohio real estate violates any of the principles of comity between the states, but is solely an expression of Ohio's public policy within that state's proper domain. We conclude,

therefore, that there is no legal reason why the portion of the estate ultimately allotted to the widow, Frances S. Mann, should be charged with the $20,000 living allowance allotted her by the State of Ohio for the support of herself and young children as contended by the guardians ad litem of the children.

Before entering upon a discussion of the remaining specific questions presented by this litigation, we quote the pertinent provisions of the will:

"Second: If the residue of my estate, after payment of all estate taxes and inheritance taxes chargeable to my wife and son, debts and expenses of administration shall exceed in value the sum of Fifty Thousand ($50,000.-00) Dollars. I direct that from such excess the sum of Two Thousand ($2000.00) Dollars be paid unto each of my nieces, Mary Minnette Whaley, Ann Whaley and Ruth Whaley, and the sum of Four Thousand ($4000.00) Dollars be paid to my sister, Adaline M. Whaley.

"Third: All the rest and residue of my estate I give devise and bequeath unto my Trustees, hereinafter named, for the following uses and purposes:

"(a) I direct that all of the net income from this trust be paid to my wife, Frances S. Mann, until my son, Timothy Gilbert Mann, becomes twenty-five years of age, after which time if there be any income in excess of Two Hundred ($200.00) Dollars per month, such excess, or not to exceed One Hundred ($100.00) Dollars per month, shall be paid to my said son and the remaining part of said income be paid to my said wife until my said son becomes thirty years of age. If the income is less than Thirty-six Hundred ($3600.00) per year, I direct that payments be made from principal and interest so as to provide for my said wife an income of Three Hundred ($300.00) Dollars per month until my said son becomes twenty-five years of age, and an income of Two Hundred ($200.00) Dollars per month

thereafter so long as she lives or until said principal is exhausted.

"(b) In the event of emergencies or severe sickness, said Trustees may make additional distributions to my said wife or son from principal if, in their sole discretion, such distributions are necessary, provided such additional distributions shall not exceed the aggregate sum of Five Thousand ($5000.00) Dollars.

"(c) If, in the sole discretion of my Trustees, additional funds are needed for the college education of my son, I authorize my Trustees to pay such expense from principal.

"(d) When my son, Timothy Gilbert Mann, becomes thirty years of age, this trust shall terminate as to him. At that time there shall be first retained in this trust assets of the then value of Thirty Thousand ($30,000.00) Dollars and one-half of the value of this trust in excess thereof shall be paid or delivered in kind to my said son. Thereafter, the entire income from said trust or not less than Two Hundred ($200.00) Dollars per month (from principal and interest) shall be paid to my said wife as long as she lives or until said fund has been exhausted.

"(e) Upon the death of my said wife this trust shall continue for the benefit of my son and if he has not attained the age of twenty-five years, my Trustees shall pay to him, or for his use and benefit, such amounts as may be needed in their sole discretion, for his maintenance and education, or they may pay to him all or any part of the income from this trust if, in their sole discretion, he shows an aptitude for management. At the age of twenty-five, my said son shall receive one-half of this trust, and, thereafter, he shall receive all of the income from the remaining trust. At the age of thirty, this trust shall terminate and my said son shall be paid all of the remaining principal.

"Fourth: I hereby nominate and appoint my said wife, Frances S. Mann, and D. Collins Lee, as Executors and Trustees under this my Last Will and Testament. As such they shall have full power and authority to sell and convey any and all of my real or personal property not specifically devised herein, at public or private sale and upon such terms as they deem advisable. They shall also have power to operate any business in which I am interested at the time of my death or to sell the same if, in their opinion, it should be sold. My said Trustees shall have full power and authority to invest and reinvest funds coming into their hands in such manner as they deem wise and prudent, and they shall not be liable for mistakes of judgment. Said Executors and Trustees shall serve without bond and if either, or both, of them should die or fail to qualify as such, I appoint The First National Bank and Trust Company, of Covington, Kentucky, as Co-Executor and Co-Trustee, or sole Executor and Trustee, with all of the powers hereinbefore granted."

After the death of the designated co-executor and co-trustee, D. Collins Lee, long associated with the First National Bank of Covington, the testator executed a codicil designating his wife and the Peoples-Liberty Bank & Trust Company of Covington as his executors and trustees, and gave to them "all the authority and directions contained in my Last Will and Testament, the same as if set forth at large herein."

■ In construing all wills, the cardinal principle followed by the courts is to give effect to the intention of the testator wherever ascertainable and whenever possible. Here, the testator provided that his "Executors and Trustees shall serve without bond," and, in view of the length of time the trust probably would be operative, he designated a corporation, Peoples-Liberty Bank & Trust Company of Covington, to act in both capacities along with his wife, Frances S. Mann. It is clearly inferable from the Fourth provision of his will that he wished either designated executor or trustee to have full power to act in case the other designated executor or trustee failed to qualify for any reason. He did not wish the trust to fail; he wanted his wife and young Timothy protected. It is fair to assume that the testator would have made similar provision for Gilbert, Jr., had he realized the need of doing so, but, be that as it may, we must construe his will in order to effect the intent it expresses, and leave the interest of Gilbert, Jr., to the operation of our pretermission statute, KRS 394.380(2), heretofore partially quoted.

■ The chancellor decided that the pretermission of Gilbert, Jr., did not nullify or prejudice any of the powers granted the executors or trustees by the will. Our pretermission statute does not revoke a will and does not provide that the pretermitted child shall inherit the share to which he would have been entitled under our statutes of descent and distribution. Rather, it provides that the pretermitted child "shall succeed to the portion of the testator's estate that he would have been entitled to if the testator had died intestate; toward raising which portion the devisees and legatees shall, out of what is devised and bequeathed to them, contribute ratably, either in kind or in money, as the court deems proper." The portion of the pretermitted child shall be measured by what he would receive under the statutes of descent and distribution, but shall be made up by ratable contributions, approved by court order, from beneficiaries under the will. In construing a similar statute of Texas, the United States Court of Appeals of the Eighth Circuit, in Sankey v. Skelly, 33 F.2d 856, 859, commented: "The word 'portion' is a word of measure or comparison, and not a word of grant. * * The will and its continued existence is thus expressly recognized by the language of the statute itself. If the will were nullified, the property would descend to the heirs at law pursuant to the statute of descent and distribution, and there would be no question remaining as to devisees and legatees, because all such legatees and de-

visees would be wiped out when the will became a nullity." This interpretation of our statute was followed without discussion in Taylor v. Lyon, 249 Ky. 398, 60 S. W.2d 964. For the sake of brevity, we do not discuss cases from other jurisdictions involving different type pretermission statutes. Our statute, KRS 394.380(2), clearly makes Gilbert, Jr's., portion determinable subject to the dower rights of his mother as would be the case under our statute of descent and distribution. Shelby's Ex'rs v. Shelby's Devisee, 1 B.Mon. 266, 40 Ky. 266. To make up Gilbert, Jr's., portion the specific legatees under Item Second of the will must each contribute one-fourth of the amount of their respective legacies and, as to the residuary estate, Gilbert, Jr's., portion is subject to all dower rights of his mother, so the trustees thereof must set aside to him or contribute one-fourth ʻof the personalty, after payment of debts, expenses of administration and allowance for the $1,500 widow's exemption, and one-half of the Kentucky real estate subject to the dower interest of his mother. Since we have held that the pretermission of Gilbert, Jr., does not prejudice or nullify the powers given the executors and trustees under the will, it follows that the interest or portion allotted to Gilbert, Jr., shall remain in the business and under the control of the executors and trustees until distributed to him or his guardian at the times the estate is distributed. This is wholly consistent with the intention of the testator as expressed in the will and is the only interpretation practicable if the powers of the executors and trustees are to be effectuated.

■■■ Under the Fourth provision or clause of the will, the testator gave his executors and trustees broad powers in handling his estate, both before settlement and afterward. They were given the power to sell both real estate and personalty at public or private sale, and to operate or sell any business in which he was interested at the time of his death, and no bond was required of them in either capacity for the faithful performance of their duties. The Peoples-Liberty Bank & Trust Company has qualified as executor, but the designated co-executor, Frances S. Mann, has not. As the sole executor of the estate, the Peoples-Liberty Bank & Trust Company may legally exercise all of the powers bestowed upon it by the will regardless of the failure of its designated co-executor to qualify. KRS 395.220(1); Varble v. Collins' Ex'r, 168 Ky. 247, 181 S. W. 1115; 21 Am.Jur., § 756, page 804; 34 C.J.S., Executors and Administrators, § 1043(c), page 1321. These authorities pertain to the power to sell land, but are even more applicable to the handling of personalty. There is nothing in the will suggesting that the testator wished it otherwise. In fact, as we have heretofore stated, we think it is quite clear, especially from the Third provision of the will, that the testator wished to cloak his youthful son, Timothy, and his young widow, Frances, with all the security he could give them, and that he did not intend those precautions to be vitiated by a failure of either designated executor or trustee to qualify. "Where the administration of an estate is granted to several and one dies, the entire authority and control reside in the survivors; and where several executors are nominated in the will, and one dies before the testator or before qualification, the others are entitled to qualify." 34 C.J.S., Executors and Administrators, § 1047, page 1329, cited with approval in Smith v. Smith, 295 Ky. 50, 173 S.W.2d 813, 816. When one of the designated co-executors refuses to qualify, there is even greater reason to repose the full testamentary powers in the one who qualified.

■■■ In order to exercise the powers of sale under a will, the person exercising them need not be qualified as both executor and trustee. Ordinarily, the powers of the executor cease with the settlement of the estate and the obligations of the trustee begin. In Kentucky the testamentary power given an executor to sell land at public or private sale, at his discretion, does not require an order of court authorizing its exercise. Buckner v. Buckner Ex'r, 185 Ky. 540, 215 S.W. 420; 33 C.J.S., Executors and Administrators, § 277, page 1299. In the case at bar, the executor is vested with wide discretionary

power by the will in selling both real and personal property of the estate, and the testamentary power to sell the personalty is not limited by statute. Colwell v. Holliday, 250 Ky. 584, 63 S.W.2d 776. The powers given the designated executors by the will were intended to be available for use during the administration of the estate.

Until the obligations of the estate were paid, including the costs of administration and the payment of the special bequests under the Second provision of the will—if that became necessary, there was no "rest and residue of my estate" to give, devise and bequeath to the testator's trustees under the will. The trust created in this will requires the good faith and business judgment of the trustees and not a peculiarly personal service such as responsibility for the personal care and nurture of young Timothy and Gilbert, Jr. As a consequence, the powers reposed in the trustee or trustees are conferred more upon the office than upon the individual or institution which occupies the office, and are exercisable by whichever designated trustee accepts the obligations imposed by the trust. 54 Am.Jur., § 296, 297, at pages 235, 236. In Hodgkin v. Martin, 262 Ky. 703, 91 S.W.2d 19, we invoked Kentucky Statutes, Section 3888, now KRS 395.220(1) above, and upheld the action of one of two designated executor-trustees who qualified and apparently exercised his power after his transition from executor to trustee. The principles of law applicable here are well stated in Atzinger v. Berger, 151 Ky. 800, 152 S.W. 971, 50 L.R.A.,N.S., 622, and confirm our conclusion that the powers given the trustee or trustees who accept the obligations of this trust are powers coupled with an interest—the interest of title to the property, and, consequently, do not fail because one of those named as trustee fails to qualify as such, but pass in toto to the one who has qualified or survived.

If the widow, Frances S. Mann, should renounce the will, may she act as co-executor or as co-trustee? "Although merely qualifying as executor or executrix under the will is not sufficient, standing alone, to constitute an election to take thereunder, it has been frequently recognized that qualifying as executor or trustee, if accompanied or followed by acts inconsistent with the exercise of a right to take against a will, tends to indicate an election to take under the instrument. However, the decisions make it clear that facts and circumstances of particular cases may be such as to show that no election to take under the will occurred, even though it appeared that the beneficiary had qualified as executor, executrix or trustee and had undertaken other conduct tending prima facie to indicate the making of such an election." 57 Am.Jur., Wills, § 1539, pages 1048, 1049 When the testator executed this will, he was presumed to know that his widow might renounce it within a year of its probate, KRS 392.080, and take her portion of his estate by the statutes of descent and distribution. Nevertheless, he wanted her to act as co-executor and co-trustee of his estate. The legal consequences of the pretermission of Gilbert, Jr., from the will are not caused by the widow and mother of the child, but are results which she must consider in deciding her own course. As it is, the two children are not treated equally, either in the amounts they will receive or the age in life at which they will receive them. If equality between them is to be approached, it will have to come through their mother. In the factual background presented to us and in the light of the provisions of the will itself, we believe the widow Frances S. Mann, may qualify as both executrix and trustee under the terms of her husband's will without estopping herself from renouncing the will if she cares to do so, and, conversely, she may renounce the will and also qualify and continue to serve as either executrix or trustee. Annotation 71 A.L.R. 665, 666; Williams v. Williams' Ex'r, 161 Ky. 55, 170 S.W. 490. If the widow renounces or accepts the will in Kentucky, she is obliged to follow the same course in Ohio. 11 Am.Jur., pages 380, 381; 105 A.L.R. 283.

When one considers the executors' and trustees' testamentary powers to sell or operate the profitable business in Ohio, the justification for allowing the widow to serve as executrix and trustee appears sensible regardless of whether she renounces the will. Most of the value of the estate is represented by the Ohio business and its future earning potential must not be depreciated. Her interest and that of the children equally depend on the success of the business. Executors and trustees may be authorized to carry on a testator's trade or business, 21 Am.Jur., Executors & Administrators, §§ 255, 256, 33 C. J.S., Executors and Administrators, §§ 193 to 195, and the right of a testator to empower his executor to carry on his business has been adjudicated in Kentucky. Haldeman v. Haldeman, 176 Ky. 635, 197 S.W. 376, by implication, at least; Schlickman v. Citizens' National Bank, 139 Ky. 268, 129 S.W. 823, 29 L.R.A.,N.S., 264. In carrying out the provisions of the trust, the trustee impliedly has whatever other powers which an ordinarily prudent individual would have in the circumstances. 54 Am. Jur., Trusts, § 345. As heretofore stated, if only one of the designated trustees qualifies, he may exercise the full powers of the trust, for under the will the trustee has title to the property.

In giving his designated trustees and executors the power to operate any business in which he was engaged at the time of his death, or to sell it if they conclude it should be sold, the testator did not say whether they had the power to incorporate the business. He did give them, as trustees, the power to invest and reinvest funds coming into their hands and exculpated them from liability for honest mistakes in judgment. While the power of a testamentary trustee to change the form or character of an estate or business should not be glibly inferred from the general powers bestowed by the will, neither should it be thoughtlessly denied. The test seems to be whether changing the form of the business would best serve the interests of the beneficiaries of the trust and the interests of other persons are not adversely affected. We believe that no testamentary trustee should be permitted to risk losing the control he has over the trust business by changing its business form—such as a change from a sole proprietorship to a corporation over which the trustee does not retain a high degree of control. Conversion to the corporate form may be permissible under a trust as broad in its implications as the one with which we are concerned, which authorizes the trustees to "operate" the business, not just to "continue" it. When considered in the light of the trustees' rather plenary power "to invest and reinvest funds coming into their hands in such manner as they deem wise and prudent" and the fact that the only business they are empowered to "operate" is the one in which the testator was engaged at the time of his death, the right to convert or "reinvest" the business or its proceeds into a corporate form of the business would appear not to be precluded. 54 Am.Jur., Trusts, § 342; Bogert, Trusts, Vol. 3, § 551. At the present time there is no concrete proposal presented which, we believe, would justify our ruling definitely upon this important question, and for that reason we overrule Section 4(b) of the chancellor's judgment which allows the trustees to incorporate the business. If the trustees later determine that incorporation of the business would be wise, they may petition the chancellor for instructions, setting out their reasons for wishing to incorporate and detailing as nearly as practicable the corporate plan proposed. However, the executors are not given the power to invest and reinvest funds and, as a consequence, we agree with the chancellor that they cannot incorporate the business.

It is clear from the will that the testator did not intend his widow to receive her dower rights as well as the benefits under the will. Our law "does not preclude the widow from receiving her dowable and distributable share, in addition to any devise or bequest made to her by the will, if such is the intention of the

testator, plainly expressed in the will or necessarily inferable from the will." KRS 392.080(2). We cannot infer from this will that the widow was to receive her dower interest in addition to the benefits under the will, and we agree with the chancellor that the share of the widow is confined to the will unless she renounces it.

In Section 3(b) of his judgment, the chancellor ruled that the "interests of Gilbert C. Mann, Jr., are defeasible and do not vest absolutely in him until he arrives at twenty-one years of age, or unless he should die before twenty-one years of age having married and had issue who survive him, in which event these interests vest absolutely in his surviving issue—the defeasibility, however, applying only to so much of his portion of the estate as at the time the defeasance occurs remains unexpended in his support and education, which remainder then shall revert to the persons to whom it is given by the will; * * *." In case Gilbert, Jr., dies before reaching twenty-one years of age leaving no issue surviving, but leaving a wife who does survive him, the judgment would deny Gilbert, Jr's., widow a dowable interest in the property. Whether this was the intent of the statute has never been determined by this court so far as we have been able to ascertain. The pertinent portion of the statute, KRS 394.380(2) is: "If any such after-born child or descendant dies under the age of twenty-one years unmarried and without issue, his portion of the estate, or so much thereof as remains unexpended in his support and education, shall revert to the person to whom it was given by the will." Since this is a contingency which may never occur in this case and since this portion of the statute has not been heretofore construed, it is the consensus of the court that we should not decide the question here. Consequently, that portion of the judgment of the chancellor so interpreting the aforequoted portion of KRS 394.380(2) is overruled as not within the purview of the present action.

The portion allocable to Timothy is measured by the provisions of the testamentary trust which we have heretofore quoted, and is detailed in the judgment of the chancellor and requires no recital here.

We believe that we have resolved the salient objections to the judgment of the chancellor and, reluctant to extend this already lengthy opinion, we refrain from discussing incidental issues which would not particularly help the litigants to chart their course. In an action of this nature, there is a shadowy line where construction of the will ends and legal advice begins. We hope we have not crossed that line.

The judgment is affirmed with the exceptions noted to Sections 3(b) and 4(b) thereof, and is reversed as to them.