In re the **ESTATE of Philip C. MORINE, Sr.**

Supreme Judicial Court of Maine.
Sept. 16, 1976.

Strout, Payson & Pellicani by Joseph M. Cloutier, Curtis M. Payson, Rockland, for plaintiff.

Richard A. McKittrick, Camden, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

WERNICK, Justice.

By decree dated January 21, 1975 the Judge of the Probate Court (Knox County) awarded to Ruth H. Morine, widow of Philip C. Morine, Sr., a widow's allowance in the amount of $6,500.00 to be paid from the approximately $20,000.00 personalty of Mr. Morine's estate.[1] Within 20 days thereafter, Philip C. Morine, Jr., son of the decedent, acting solely in his capacity as the executor of his father's estate, appealed from said decree to the Superior Court sitting as the Supreme Court of Probate.[2]

The "appeal" document filed in the Probate Court stated that the executor was "ag-

grieved" by the Probate Court's decree ordering a widow's allowance and set forth the various reasons for the appeal. The attorney for the executor forthwith mailed a copy of said "appeal" document to the attorney for the widow, and he so certified in a certificate filed in the Probate Court.

In the Supreme Court of Probate the widow filed a motion to dismiss the appeal on alternative grounds that: (1) Philip C. Morine, Jr., purporting to appeal strictly in his capacity as executor, was not a "person aggrieved" by the decree granting a widow's allowance and, hence, not entitled to appeal pursuant to 4 M.R.S.A. § 401; (2) in any event, the appeal was not perfected because there had been no compliance with the requirements of 4 M.R.S.A. § 402 that a purported appellant

"serve . . . a copy of . . . [the] reasons, [for appeal] attested by the register [of probate]."[3]

---

* Weatherbee, J. sat at argument and participated in consultation, but died before the opinion was adopted.

1. 18 M.R.S.A. § 801 provides:
"In the settlement of any intestate estate, or of any testate estate which is insolvent or in which no provision is made for the widow in the will of her husband, or when she duly waives the provision made, the judge may allow the widow so much of the personal estate, besides her ornaments and wearing apparel, as he deems necessary, according to the degree and estate of her husband and the state of the family under her care. He may allow her any one pew in a meetinghouse, of which the deceased died seized. Such allowance, when recorded, vests the title in her. When an estate which, at the time of said allowance, was considered insolvent, ultimately appears to be solvent, the judge by a subsequent decree may make the widow a further reasonable allowance. When, after an allowance has been made from any estate, additional personal property belonging to said estate comes to the knowledge of the judge, he may make a further allowance to her therefrom."

2. 4 M.R.S.A. § 401 states:
"The Superior Court is the supreme court of probate and has appellate jurisdiction in all matters determinable by the several judges of probate. Any person aggrieved by any or-

der, sentence, decree or denial of such judges, except the appointment of a special administrator, or any order or decree requiring any administrator, executor, guardian or trustee to give an additional or new official bond, or any order or decree . . . removing a guardian from office, may appeal therefrom to the supreme court of probate to be held within the county, if he claims his appeal within 20 days from the date of the proceeding appealed from; or if, at that time, he was beyond sea, or out of the United States and had no sufficient attorney within the State, within 20 days after his return or the appointment of such attorney."

3. As herein pertinent, 4 M.R.S.A. § 402 provides:
"Within the time limited for claiming an appeal, the appellant . . . shall file in the probate office the reasons of appeal; and, within 34 days from the date of the proceeding appealed from, he shall serve all the parties who appeared before the judge of probate on the case that have entered or caused to be entered their appearance in the docket of said court, with a copy of such reasons, attested by the register. When a party appears by an attorney residing in this State before the judge of probate in any case and an appeal is taken, the service of a copy of the reasons of appeal upon such attorney shall be sufficient."

On April 7, 1975 the Justice presiding in the Supreme Court of Probate granted the widow's motion to dismiss the appeal on the first ground asserted by the widow:—that the executor was not a "person aggrieved."

From the judgment entered in the Supreme Court of Probate dismissing his appeal to that Court the executor has appealed to this Court.

We sustain the appeal.

*1*

The Supreme Court of Probate erred in ruling that in the circumstances here involved the executor was not a "person aggrieved" within the meaning of 4 M.R.S.A. § 401.

More than a century ago this Court enunciated a general principle to guide in the determination of whether a person is "aggrieved" by a decree of a Judge of Probate.

"In legal acceptation, a party is aggrieved by such decree, only when it operates on his property, or bears upon his interest directly." *Deering v. Adams,* 34 Me. 41, 44 (1852)

See also: *Stilphen, Appellant,* 100 Me. 146, 60 A. 888 (1905); *Burgess v. Shepherd,* 97 Me. 522, 55 A. 415 (1903).

■ As to the first above-stated facet of aggrievement,—whether the Probate decree

"operates on . . . [the] property [of the person seeking to appeal]",

—the person who is the executor of an estate takes no *beneficial* property interest of his own by virtue of the "title" his office as executor gives him to the personal property of the estate; the executor's "title" is merely the naked interest of a fiduciary. *Carter v. Manufacturers' National Bank of Lewiston,* 71 Me. 448 (1880); *Johnson v. Johnson,* 81 Me. 202, 16 A. 661 (1889); see: *Stilphen, Appellant,* 100 Me. 146, 148, 60 A. 888 (1905). Hence, here, the Probate Court decree ordering a widow's allowance did not aggrieve the executor, qua executor, by operating directly on property in which the executor, in such capacity, had a beneficial right of property.

We turn, then, to evaluate whether in the present context the executor was a person aggrieved within the other prong stated in *Deering v. Adams,* supra:—whether the Probate Judge's award of a widow's allowance "bears directly" upon an "interest" arising as an incident of the duties an executor should perform in his official capacity.

In *Webb v. Dow,* 120 Me. 519, 115 A. 279 (1921) this Court decided that when the will itself imposes no special duties upon the executor, the duties which the person who is executor is to discharge in ordinary course create no interest in the executor as to a judicial interpretation of the will; hence, the executor is not a "person aggrieved" by, and, therefore, may not appeal from, such adjudication. See also: *Burgess v. Shepherd,* 97 Me. 522, 526, 55 A. 415 (1903). *Webb v. Dow,* supra, stated this principle as follows:

"No duty is imposed upon him [the executor] by the will except those that the statute prescribes, and when he has paid the legacy and debts and funeral charges, he will turn over all the property remaining, real and personal, to the . . . [person the Court's interpretation of the will had ruled to be entitled to it] and his responsibility is ended. What the legal and equitable rights of the parties thereafter may be is no concern of his." (120 Me. p. 522, 115 A. p. 280)

In *Stilphen, Appellant,* supra, this Court decided that once the Probate Court Judge has made a final decree of distribution,

"[i]t is [then] immaterial to . . . [the executor] to whom he . . . [has been] required to pay over . . ."

and, therefore, the executor

" . . . cannot be said to be aggrieved by a decree directing him to pay to a legatee rather than to an heir." (100 Me. p. 148, 60 A. p. 889)

*Webb v. Dow,* supra, and *Stilphen, Appellant,* supra, are concrete examples of this Court's recognition, and application, of a generally acknowledged doctrine as to the nature of fiduciary representation. Like any fiduciary who holds a particular fund for beneficiaries, the executor of an estate represents all the beneficiaries of the estate and, therefore, must deal impartially with them. Accordingly, the executor may not take sides in the adjudication of the individual claims of beneficiaries one against another. As the neutral representative of all the beneficiaries, the executor may act only as a

" . . . stakeholder with no duties to perform other than to pay out funds to the various claimants as ordered by the proper court, and the beneficiaries must then protect their own rights."

See: *In Re Estate of John C. Ferrall,* 33 Cal.2d 202 (Adv. 172), 200 P.2d 1, 2–3 (1948).

Furthermore, the executor is protected from personal liability when he makes payment pursuant to the order of a proper court even though it may not be a court of last resort. Thus, there is no possibility of a personal liability upon the executor to constitute a potential property interest of his own entitling the executor to appeal from the final distribution order of a proper court. *Webster v. Larmore,* 270 Md. 351, 311 A.2d 405 (1973).

The situation is different, however, when the order of a proper court *adversely* affects the *totality* of the interests of the beneficiaries of a particular fund as against one who is not such a beneficiary. As the representative of all the beneficiaries, the fiduciary representative has responsibility, as fiduciary, to protect and preserve from depletion the total fund in which all the beneficiaries will share. Hence, when a court makes an order in favor of a non-beneficiary of the fund which adversely affects it by diminishing the total amount of the fund available to be paid the beneficiaries of it, the interests of the beneficiaries as an entire gorup—not as one against another—are being impaired. In such context the executor acts in proper discharge of his responsibility as executor when he appeals from such order, thereby to seek to protect the interests of all the beneficiaries as a single group. He is then aggrieved strictly as an executor and is, therefore, as executor, entitled to appeal from such court order. *Stringer v. Young,* 191 N.Y. 157, 83 N.E. 690 (1908); *Clay v. Hamilton,* 116 Ind.App. 214, 63 N.E.2d 207 (1945); *Hendrick v. Mitchell,* 320 Mass. 155, 69 N.E.2d 466 (1946); see: *In Re Estate of John C. Ferrall,* supra, (p. 3 of 200 P.2d); see also: Restatement of Trusts, § 178, Com. a and § 177, Com. d; Scott on Trusts, 940.

In the instant situation, then, the dispositive question is the nature of the widow's allowance:—more particularly, whether, as the recipient of a widow's allowance, the widow is sharing in the estate of the decedent as a beneficiary thereof or is, rather, a non-beneficiary of the estate who receives the widow's allowance adversely to those who are the beneficiaries.

In *Smith v. Howard,* 86 Me. 203, 29 A. 1008 (1894) this Court stated that the widow's allowance is neither "a fixed and absolute interest in the estate" nor "a distributive share of it." (p. 208, 29 A. 1008) Cf. also: *Bright v. Chapman,* 105 Me. 62, 72 A. 750 (1908). We explained in *Smith v. Howard,* supra, that the widow's allowance had

" . . . its origin in a humane and beneficent public policy that seeks to encourage *the continuance of the family relations* by providing against the exigencies arising from the death of the *head of the family.*" (86 Me. p. 208, 29 A. p. 1010) (emphasis supplied)

In *Brown v. Hodgdon*, 31 Me. 65 (1849) the legal relationship of the widow's allowance to the estate of the deceased was stated as follows:

"It has a priority over all other claims, except those arising from the expenses of the funeral and of administration, and may be taken out of any of the personal property. If the rights of legatees are disturbed, they must adjust them among themselves." (p. 69)

■ The widow's allowance is thus: (1) the extension beyond death, to meet the exigencies of needs arising by virtue of death, of the inter vivos obligation of a husband to support his wife, and (2) this obligation of support, as thus extended to assume the form of the widow's allowance, has priority over not only the decedent's creditors but also those to whom the decedent's estate passes as the beneficiaries thereof.

■ In basic substance, then, while the widow receives the widow's allowance by virtue of a relationship to the deceased, she nevertheless does not receive it as a share of the estate *passing* to her *by descent* from the deceased. Rather, the widow takes the widow's allowance *as against* those persons who take by descent from the deceased as the beneficiaries of his estate. As was said in *In Re Woodward's Estate*, 230 Cal.App.2d 113, 40 Cal.Rptr. 781 (1964)—in which the Court was discussing the closely analogous concept of a statutorily prescribed "family allowance",—because the

" . . . allowance provision is an extension of the decedent's obligation of support *and that the right has priority over the rights of heirs* is also by necessary inference a holding that heirship is neither a necessary nor relevant concomitant to an enjoyment of the family allowance." (emphasis in the original) (p. 783 of 40 Cal.Rptr.)

Since the Probate Judge's order granting a widow's allowance thus operates against the interests of all of those who are the beneficiaries of the estate, and whom the executor has a duty to represent as a group to preserve and protect the aggregate of the fund in which the beneficiaries of the estate will share,[4] the executor has a legitimate interest to contest the propriety of a judical decree granting a widow's allowance.

*Tarbox v. Fisher*, 50 Me. 236 (1863) is an implicit confirmation of this conclusion. In *Tarbox* the Probate Court had ordered a widow's allowance, and the executor of the decedent's will appealed from that decree. The widow died before the next term of the Supreme Court of Probate convened. The executor of the decedent's will nevertheless proceeded with the prosecution of his appeal. The administrator appointed for the estate of the widow claimed as against the executor of the decedent's will that the decree of the Probate Court granting the widow's allowance should be affirmed and the amount of the widow's allowance paid to the administrator of the widow's estate on the rationale that once the widow's allowance was ordered by the Probate Court, it became the widow's property which passed into her estate when she died. This Court rejected the contention of the widow's administrator, holding that the executor's appeal from the Probate Court decree granting a widow's allowance had suspended its legal effectiveness and, therefore, the widow had no property right which would "become absolute until it should be affirmed by the appelate Court." (p. 238)

---

4. Indeed, in *Paine v. Forsaith*, 84 Me. 66, 24 A. 590 (1891) this Court referred to the widow's allowance as "a claim against the estate in the executors' hands for a personal allowance." (p. 71, 24 A. p. 591.)

Also, in *Bright v. Chapman*, 105 Me. 62, 67, 72 A. 750, 752 (1908) this Court stated that the " . . . widow's demand for an allowance, . . . is commonly, if not invariably, known in our courts as the widow's claim for an allowance."

However, had the Court in *Tarbox v. Fisher* conceived the executor to be without right to appeal from the decree of the Probate Judge because the executor was not a person aggrieved thereby, the Court could not have utilized the rationale on which the case was decided. If the executor lacked right to appeal, no doubt the *Tarbox* Court (speaking in 1863) would have looked upon the executor's appeal as a *nullity ab initio*. Manifestly, then, a purported appeal which, in legal contemplation, had never come into existence could not have operated to prevent the order of a widow's allowance from becoming absolute.

*Tarbox v. Fisher* thus impliedly supports the decision at which we now have expressly arrived:—by virtue of his duty to protect and preserve the totality of the estate against depletion by adverse interests, the executor is a "person aggrieved" by the decree of a Judge of Probate awarding a widow's allowance.

The authorities elsewhere support this conclusion, either squarely or by close analogy. *In re Cannon's Estate*, 18 Wash. 101, 50 P. 1021 (1897). See: *Rhode Island Hospital Trust Company v. Hopkins*, 38 R.I. 59, 94 A. 724 (1915). Cf. *In Re Woodward's Estate*, supra; *Agnew v. Agnew*, 52 S.D. 472, 218 N.W. 633 (1928); *In Re Snowball's Estate*, 156 Cal. 235, 104 P. 446 (1909); and *In Re Welch's Estate*, 106 Cal. 427, 39 P. 805 (1895). Contra: *In re Stachnick's Estate*, 376 Pa. 592, 103 A.2d 765 (1954).

2

We reject as a valid ground for dismissal of the executor's appeal the alternative contention of the widow (as to which the Supreme Court of Probate made no ruling):—that the executor failed to meet the appeal requirements of 4 M.R.S. A. § 402 because the executor had failed to "serve" a copy, "attested by the register", of the "appeal" document filed in the Probate Court.

Since the widow was here represented before the Judge of Probate by "an attorney residing in this State", the textual language of Section 402 made it unnecessary that the copy of the reasons for appeal be "attested by the register." As stated expressly in Section 402, in such circumstances it is only requisite that a "copy of the reasons of appeal", without need that it be attested by the Register, be "served" upon the attorney.

What then, is the meaning of the "service" referred to by Section 402?

We find without merit the contention of appellee widow that notwithstanding that, here, an attorney had appeared for the widow in the Probate Court, Section 402 nevertheless requires the same kind of "service" that Rule 4(b) M.R.C.P. demands for the commencement of an original civil action, viz., delivery in hand by an officer qualified to serve civil process, and as shown by a "return" made by the officer. We hold that the true intendment of Section 402, as applicable to the instant circumstances, is correctly stated in the text of 1 F.McK. & W., Me.Civ.P.2d at p. 188:

"Since the other parties have already appeared of record, service of the reasons of appeal is by mailing to the attorneys who appeared in the Probate Court, in accordance with Rule 5(b) [M.R.C.P.]."

Here, there was such a "service." The executor's attorney had mailed to the attorney who had appeared for the widow in the Probate Court a copy of the "appeal" document filed in the Probate Court which contained the reasons of appeal.

The entry is:

*Appeal sustained.*

*Case remanded to the Supreme Court of Probate for further proceedings.*

All Justices concurring.